1  Gary R. Selvin, State Bar No. 112030
   Joshua S. Leach, State Bar No. 209061
2  SELVIN WRAITH HALMAN LLP
   505 14th Street, Suite 1200
3  Oakland, CA 94612
   Telephone:    (510) 874-1811
4  Facsimile:    (510) 465-8976
   E-mail:  gselvin@selvinwraith.com
5           jleach@selvinwraith.com

6  Attorneys for Plaintiff
   Quanta Specialty Lines Insurance Company
7

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 QUANTA SPECIALTY LINES INSURANCE          CASE NO.: 3:08-CV-00488-EMC
   COMPANY, an Indiana corporation,
12                                           **MEMORANDUM IN SUPPORT OF**
               Plaintiff,                    **QUANTA SPECIALTY LINES INSURANCE**
13                                           **COMPANY'S MOTION TO ENTER**
        v.                                   **DEFAULT JUDGMENT**
14
   JOHN B. WONG dba BOXER GROUP; JILL        Date:   June 25, 2008
15 PEASLEY, a California resident; CHRIS      Time:   10:30 a.m.
   LYNCH, a California resident; and MICHAEL  Dept:   15/Hon. Magistrate Judge Chen
16 FONTANELLO, a California resident,
                                             Assigned to Magistrate Judge Edward M. Chen
17             Defendants.                   Complaint Filed:  January 23, 2008

18

19                    I.    INTRODUCTION

20         This lawsuit arises out of an insurance coverage dispute for damage that occurred in the

21 course of a residential remodeling project.  The property owners hired defendant John B. Wong dba

22 Boxer Group ("Wong"), a general contractor, to remodel their property.  The remodeling did not go

23 as planned, and the owners sued Wong, as well as the architects, alleging design defects and damages

24 from water intrusion (the "underlying lawsuit").

25         Quanta Specialty Lines Insurance Company ("Quanta") issued to Wong a general liability

26 policy in effect for a small portion of the remodel – the policy was cancelled for non-payment of

27 premium shortly after Wong began work on the project.  Quanta filed the within declaratory relief

28 action seeking a judgment declaring that, pursuant to the terms and conditions of its policy, Quanta

1   has no duty to defend Wong from the claims asserted in the underlying lawsuit.

2       Though the owners have appeared in this action and answered, Wong has not.  On April 28,

3   2008, this Court entered Wong's default.  By order dated May 16, 2008 (Docket No. 31), on

4   Plaintiff's oral motion, unopposed by the remaining defendants who were present at the hearing, this

5   Court ordered Quanta's claims against Wong severed so that Quanta could seek entry of a default

6   judgment against Wong from this Court.

7                           **II.     BACKGROUND**

8   **A.     Procedural Background**

9       On January 23, 2008, Quanta Specialty Lines Insurance Company ("Quanta") initiated this

10  insurance coverage lawsuit against John B. Wong dba Boxer Group ("Wong"), Jill Peasley, Chris

11  Lynch and Michael Fontanello (the "owners" or "underlying plaintiffs") seeking an adjudication of

12  Quanta's rights, duties and obligations under a liability policy issued by Quanta to Boxer.  *See*

13  Quanta's Complaint against Wong, et al., **Exhibit "A"** to the Request for Judicial Notice ("RJN"),

14  referred to herein as the "Quanta Complaint".

15      On February 5, 2008, at counsel's instruction, Fred Gurr of One Hour Legal Service

16  personally served upon defendant Wong the Summons and Complaint.  *See* Return of Service,

17  **Exhibit "A"** to Leach Declaration.  As of the date of this Motion, Wong has not filed a responsive

18  pleading or motion as permitted by law.

19      On April 23, 2008, Quanta requested that the Clerk enter Wong's default.  *See* Docket No. 14.

20  On April 28, 2008, the clerk entered Wong's default.  **Exhibit "B"** to the RJN (Docket No. 19).  At

21  May 14, 2008, the parties appeared at a Case Management Conference.  At that hearing, the Court

22  entertained an oral motion by Quanta to sever Wong from the contested part of the action so that it

23  could proceed with obtaining the entry of a default judgment as to Wong.  The remaining defendants,

24  represented by counsel at that hearing, had no objections, and the Court granted the motion to sever.

25  By order dated May 16, 2008, the Court entered an Order Granting Parties' Motion to Sever

26  Defendant Wong.  **Exhibit "C"** to the RJN (Docket No. 31) (the "May 16th Order").  The order

27  noted that Wong had defaulted, and the "real dispute is between (1) the underlying plaintiffs who now

28  hold a judgment against Wong and (2) Quanta as to whether there is coverage to pay for some or all

---

2

1   of that judgment." *Id.* Pursuant to the Court's order, Quanta served a copy of the May 16th Order on

2   defendant Wong. *See* **Exhibit "B"** to Leach Declaration. Wong has made no attempt to contact

3   Quanta or its counsel regarding the severance of the case or the imminent entry of the default

4   judgment. *See* ¶ 4 of Leach Declaration. Finally, defendant Wong is not a minor or incompetent, nor

5   is he currently performing military service.

6   **B.     Complaint Allegations**

7       This dispute arises out of an underlying lawsuit the owners filed against Wong, entitled

8   <u>Peasley, et al. v. John Wong dba Boxer Group, et al.</u>, in the California Superior Court for San

9   Francisco County, Civil Action No. CGC-06-454208 (a copy of the underlying Peasley complaint is

10  attached as Exhibit "A" to the Quanta Complaint, and is attached as part of **Exhibit "A"** to the RJN

11  and referred to herein as the "the underlying action"). On or about July 14, 2006, the owners initiated

12  the underlying action against Wong and certain other professionals who worked on the owners'

13  home, alleging breach of contract, negligence, breach of warranty, fraud/deceit, and negligent and

14  intentional misrepresentation.

15      In the underlying action, the underlying plaintiffs sued Wong, a general contractor, in

16  connection with the remodeling of a Victorian home at 2848 Steiner Street in San Francisco,

17  California, which property was owned by the underlying plaintiffs (the "Property"). *See* ¶ 5 of the

18  Quanta Complaint. The underlying plaintiffs generally alleged that they contracted with Wong to

19  improve and expand the property for the contract price of $771,000. *Id.* Wong was to finish the

20  renovation within eight months of commencement; work commenced on or around September 30,

21  2005. In the course of the repair, Wong removed the roof of the residence, allegedly without properly

22  covering the property, thereby allowing water to intrude and damage the residence during subsequent

23  storms. Additionally, the underlying plaintiffs alleged that Wong constructed the building's top floor

24  at a height in excess of that permitted by San Francisco building codes. *Id.*

25      The parties to the underlying action submitted their dispute to private arbitration, as they were

26  contractually obligated to do. *See* ¶ 6 of the Quanta Complaint. The arbitrator found that the owners'

27  cost to repair the property was $603,780. He calculated this by evaluating the difference between the

28  cost of reconstruction after Wong and the other professionals left the job and the amount the owners

**MEMORANDUM IN SUPPORT OF QUANTA SPECIALTY LINES INSURANCE COMPANY'S**
**MOTION TO ENTER DEFAULT JUDGMENT          CASE NO.: 3:08-CV-00488-EMC**

were contractually obligated to pay originally, plus the amount they actually paid for the original construction.  The arbitrator rejected the owners' entitlement to carrying costs.  The arbitrator determined that the diminution in value was $500,000.  Accordingly, because the diminution in value was less than the cost of repair, he limited the award to $500,000.  The Interim Award is attached as Exhibit "B" to the Quanta Complaint, which is part of **Exhibit "A"** to the accompanying RJN.  *Id.*

Quanta issued a policy of insurance to "John B. Wong DBA: Boxer Group" effective from October 13, 2005 until it was canceled effective December 22, 2005 due to nonpayment of premium.  The policy provided comprehensive general liability protection with the limits of $1 million per occurrence and $2 million in the aggregate.  The Quanta insurance policy is attached as Exhibit "C" to the Quanta Complaint, which is part of **Exhibit "A"** to the RJN, and incorporated herein by reference.

The relevant terms of the policy provide:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement.

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

. . .

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the

4

"bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

"Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property that is not physically injured."

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The policy excludes "property damage" as follows:

**Course of Roofing Operations Exclusion (Endorsement)**

This insurance does not apply to, and the company shall have no duty to defend:

    1.    "Property damage" to any building or structure or to any property within such building or structure resulting from, caused by, or arising out of water (water includes rain, hail, sleet, or snow).

    2.    Consequential damages, including loss of use, resulting from such "property damage" described above.

The policy also excludes "property damage"

**j.  Damage to Property**

"Property damage" to:

    …

    (4)    Personal property in the care, custody or control of the insured;

    (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**l.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

MEMORANDUM IN SUPPORT OF QUANTA SPECIALTY LINES INSURANCE COMPANY'S
MOTION TO ENTER DEFAULT JUDGMENT    CASE NO.: 3:08-CV-00488-EMC

1      This exclusion does not apply if the damaged work or the work out of
which the damage arises was performed on your behalf by a
2  subcontractor.

3      Wong tendered the defense of the underlying action to Quanta. Quanta acknowledged receipt

4  and defended Wong subject to a full reservation of rights including the right to deny coverage, the

5  right to withdraw from the defense, and the right to reimbursement of defense costs. *See* ¶ 9 of the

6  Complaint.

7                          **III.    DISCUSSION**

8  **A.    Legal Standard**

9      Federal Rule of Civil Procedure ("FRCP") 55(b) states that, aside from claims for a "sum

10  certain," the party seeking entry of a default judgment must apply to the Court. Rule 55 of the Fed.

11  Rules of Civ. Proc. (West 2008). According to Rule 55, "the court may conduct hearings or make

12  referrals –preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment,

13  it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth

14  of any allegation by evidence; or (D) investigate any other matter." Rule 55(b) is part of the FRCP's

15  overarching purpose of securing "the just, speedy, and inexpensive determination of every action."

16  *See* Kennerly v. Aro, Inc., 447 F. Supp. 1083 (D.C. Tenn. 1977).

17      Upon default, the allegations of the complaint are deemed true. *See* TeleVideo Systems, Inc.

18  v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) ("The general rule of law is that upon default the

19  factual allegations of the complaint, except those relating to the amount of damages, will be taken as

20  true"), citing Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir.1977).

21  **B.    Entry of Default Judgment is Appropriate Under the Within Facts**

22      Quanta personally served Wong with the Complaint in early February, over two months

23  before it requested entry of his default. Quanta provided notice of this Court's May 16th Order, over

24  a month ago, advising Wong that Quanta would be seeking entry of a default judgment. For whatever

25  reason, Wong has clearly chosen not to participate in this lawsuit. Because Wong has chosen not to

26  contest this action and has defaulted, the Court is to deem the Complaint allegations as true.

27      **1.    Legal Standards Applicable to Coverage Determination**

28      If the underlying lawsuit alleged claims potentially covered by Quanta's policy, Quanta has a

**MEMORANDUM IN SUPPORT OF QUANTA SPECIALTY LINES INSURANCE COMPANY'S
MOTION TO ENTER DEFAULT JUDGMENT    CASE NO.: 3:08-CV-00488-EMC**

1  duty to defend Wong in that lawsuit. *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 879

2  (2001) (An insurer must defend its insured in an action that gives rise to a potential for indemnity).

3  An insurer's duty to defend is excused only when "the underlying complaint 'can by no conceivable

4  theory raise a single issue which could bring it within the policy coverage.'" *Lakeside Non-Ferrous*

5  *Metals, Inc. v. Hanover Ins. Co.*, 172 F.3d 702, 704 (9th Cir. 1999), *citing Montrose Chem Corp. v.*

6  *Superior Court*, 6 Cal. 4th 287, 300 (1993). The duty to defend is assessed at the outset of litigation

7  against an insured, "from the facts and inferences known to an insurer from the pleadings, available

8  information and its own investigations at the time of the tender of defense." *CNA Cas. of Cal. v.*

9  *Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 610 (1986).

10     The interpretation of an insurance policy is generally a legal determination. *See Homestead*

11  *Ins. Co. v. Ryness Co.*, 851 F. Supp. 1441, 1443 (N.D. Cal. 1992). Courts determine whether an

12  insurer has a duty to defend its insured by comparing the allegations of the third party complaint with

13  the terms of the policy. *Kazi*, 24 Cal. 4th at 879.

14     **2.     Quanta had No Duty to Defend Wong In the Underlying Lawsuit**

15     Pursuant to the allegations of the underlying complaint, there are three alleged sources of

16  damage, none of which are covered by Quanta's policy: (i) that Wong built the third floor higher than

17  permitted by the City, requiring subsequent correction; (ii) certain of Wong's work was poorly done,

18  such as the framing, and had to be replaced; and (iii) Wong failed to adequately protect the project

19  from water intrusion, resulting in water damage to all parts of the house. None of these types of

20  damage are covered by the Quanta policy.

21     In order to trigger coverage under the policy, a claim must allege "property damage" that

22  occurred during the policy period. "Property damage" is defined as "physical injury to tangible

23  property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property

24  that is not physically injured." Improper construction of a building at the improper height does not

25  qualify as "property damage." <u>New Hampshire Insurance Company v. Vieira</u>, 930 F.2d 696 (9th Cir.

26  1991). A general liability policy is not intended to guaranty the quality of the policyholder's work;

27  rather, it is intended to cover damage caused by accident or misfortune. As the <u>Vieira</u> court observed:

28

**MEMORANDUM IN SUPPORT OF QUANTA SPECIALTY LINES INSURANCE COMPANY'S**
**MOTION TO ENTER DEFAULT JUDGMENT                    CASE NO.: 3:08-CV-00488-EMC**

1    the opposite result would transform a general liability insurance policy into a
     guarantee or contractual performance bond. In that event, the insured would not be
2    discouraged from defective workmanship since he or she would recover from the
     insurer even if the diminution in value to the project arose solely due [to] the
3    defectiveness of its own work.

4    *Id*. at 701. For the same reasons, the cost of replacing Wong's allegedly shoddy work (e.g., the

5    framing) also does not qualify as property damage. Without property damage, the insuring agreement

6    of the policy is not triggered and there is no duty to defend.

7        This leaves only the third category of damages, the damage caused by water intrusion through

8    the roof. The policy excludes coverage for "'Property damage' to any building or structure or to any

9    property within such building or structure resulting from, caused by, or arising out of water (water

10   includes rain, hail, sleet, or snow)" and "Consequential damages, including loss of use, resulting from

11   such 'property damage' described above." The exclusion's plain language excludes property damage

12   caused by rain entering the dwelling. The property damage alleged in the underlying complaint was

13   caused by water intrusion resulting from Wong's removal of the roof. As such, the Course of

14   Roofing Operations Exclusions applies to preclude coverage.

15       **3.    Quanta has No Duty to Indemnify Wong From the Arbitration Award**

16       Because the duty to defend is broader than the duty to indemnify, if there is no duty to defend,

17   there can be no duty to indemnify. *See, e.g.*, <u>Aerojet-General Corp. v. Commercial Union Ins. Co.</u>,

18   155 Cal. App. 4th 132, 141 (2007) (discussing the so-called "Foster-Gardner syllogism"). "The duty

19   to defend is broader than the duty to indemnify. The duty to defend is not broad enough to extend

20   beyond a 'suit,' i.e., a civil action prosecuted in a court, but rather is limited thereto. A fortiori, the

21   duty to indemnify is not broad enough to extend beyond 'damages,' i.e., money ordered by a court,

22   but rather is limited thereto." *Id.*, citations omitted. Thus, since Quanta has no duty to defend Wong

23   from the allegations of the underlying complaint, it has no duty to indemnify him from the arbitration

24   award.

25                    **IV.    CONCLUSION**

26       Pursuant to Rule 55(b), Quanta respectfully requests that this Court enter a default judgment

27   in its favor against Wong on the first and second causes of action, holding that Quanta has no duty to

28   defend Wong against any of the allegations contained in the underlying lawsuit, and that Quanta has

8

1 | no duty to indemnify Wong for the arbitration award.

2 | Dated:  June 16, 2008                                  SELVIN WRAITH HALMAN LLP

3 |

4 |                                                          By: _____/s/ Joshua S. Leach_____

5 |                                                               Gary R. Selvin
                                                                Joshua S. Leach
                                                                Attorneys for Plaintiff

6 |                                                               Quanta Capitol Holdings, Ltd.

7 | 52425.doc

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

9