Gary R. Selvin, State Bar No. 112030
Joshua S. Leach, State Bar No. 209061
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone:     (510) 874-1811
Facsimile:     (510) 465-8976
E-mail:   gselvin@selvinwraith.com
          jleach@selvinwraith.com

Attorneys for Plaintiff
Quanta Specialty Lines Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUANTA SPECIALTY LINES INSURANCE COMPANY, an Indiana corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>JOHN B. WONG dba BOXER GROUP; JILL PEASLEY, a California resident; CHRIS LYNCH, a California resident; and MICHAEL FONTANELLO, a California resident,<br><br>          Defendants. | CASE NO.: 3:08-CV-00488-EMC<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF QUANTA SPECIALTY LINES INSURANCE COMPANY'S MOTION TO ENTER DEFAULT JUDGMENT**<br><br>Date:   June 25, 2008<br>Time:  10:30 a.m.<br>Dept:   15/Hon. Magistrate Judge Chen<br><br>Assigned to Magistrate Judge Edward M. Chen<br>Complaint Filed:  January 23, 2008 |

          Plaintiff Quanta Specialty Lines Insurance Company hereby requests the Court to take judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of the following documents attached as exhibits to this request:

          Exhibit A:     Quanta's Complaint filed in the action entitled *QUANTA SPECIALTY LINES INSURANCE COMPANY, an Indiana corporation, v. JOHN B. WONG dba BOXER GROUP; JILL PEASLEY, a California resident; CHRIS LYNCH, a California resident; and MICHAEL FONTANELLO, a California resident*, Action No.  3:08-CV-00488-EMC.

          Exhibit B:     Clerk's notice of entry of default, Docket No. 19.

          Exhibit C:     Court's May 16, 2008 Order Granting Parties' Motion to Sever Defendant

1

1    Wong.

2

3    Dated:  June 16, 2008                    SELVIN WRAITH HALMAN LLP

4

5                                            By: _____/s/ Joshua S. Leach_____
                                                 Gary R. Selvin
6                                                Joshua S. Leach
                                                 Attorneys for Plaintiff
7                                                Quanta Capitol Holdings, Ltd.

8    52434.doc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF QUANTA SPECIALTY LINES INSURANCE COMPANY'S MOTION TO ENTER DEFAULT JUDGMENT     CASE NO.: 3:08-CV-00488-EMC**

Gary R. Selvin, State Bar No. 112030
Joshua S. Leach, State Bar No. 209061
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone:    (510) 874-1811
Facsimile:    (510) 465-8976
E-mail:  gselvin@selvinwraith.com
        jleach@selvinwraith.com

Attorneys for Plaintiff
Quanta Specialty Lines Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUANTA SPECIALTY LINES INSURANCE COMPANY, an Indiana corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>JOHN B. WONG dba BOXER GROUP, JILL PEASLEY, a California resident; CHRIS LYNCH, a California resident; and MICHAEL FONTANELLO, a California resident,<br><br>            Defendants. | CASE NO.: C 08 00488 EMC<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>Complaint Filed:  January 23, 2008 |

Plaintiff Quanta Specialty Lines Insurance Company, an Indiana corporation ("Quanta" or "Plaintiff"), complains of defendants John B. Wong dba Boxer Group, a California resident ("Wong"), Jill Peasley, a California Resident ("Peasley"), Chris Lynch, a California Resident ("Lynch"), and Michael Fontanello, a California Resident ("Fontanello;" Boxer, Peasley, Lynch and Fontanello referred to collectively herein as "Defendants"), as follows:

**I.    JURISDICTION AND VENUE**

1.    Jurisdiction over this action arises under 28 U.S.C. §§ 1332 and 2201(a).  There is complete diversity of citizenship and the amount in controversy exceeds $500,000.  Venue is proper under 28 U.S.C. § 1391(b) and (c) and under 28 U.S.C. § 1400(b), this claim having arisen in this judicial district.

**COMPLAINT FOR DECLARATORY RELIEF**            **CASE NO.: C 08 00488 EMC**

## II.    PARTIES

2.    During all relevant time periods, Quanta was and is both an insurance company and a corporation duly organized and existing under the laws of the State of Indiana, having its principal place of business in New York.

3.    On information and belief, at all times relevant to this lawsuit each of the Defendants in this action is an individual residing in San Francisco, California.  Defendant Wong is insured under the policy of insurance referenced below, and seeks benefits under the policy; Peasley, Lynch, and Fontanello are potential judgment creditors with potential rights against plaintiff pursuant to Insurance Code Section 11580, and are named as defendants herein so as to bind them on any adjudication of coverage as to claims they may have against plaintiff under the policy referenced below.

## III.    FACTUAL BACKGROUND

4.    Without admitting the truth of the allegations therein, Quanta incorporates by reference all the allegations set forth in the complaint entitled <u>Peasley, et al. v. John Wong dba Boxer Group, et al.</u>, in the California Superior Court for San Francisco County, Civil Action No. CGC-06-454208, including all cross-claims and counter claims ("the underlying action"), which complaint is attached hereto as **Exhibit "A."**  Peasley, Lynch and Fontanello, the plaintiffs in the underlying action, shall be referred to collectively as "the underlying plaintiffs" or the "owners."

5.    On or about July 14, 2006, the owners initiated the underlying action against Wong and certain other professionals who worked on the owners' home, alleging breach of contract, negligence, breach of warranty, fraud/deceit, and negligent and intentional misrepresentation.  In the underlying action, the underlying plaintiffs sued Wong, a general contractor, in connection with the remodeling of a Victorian home at 2848 Steiner Street in San Francisco, California, which property was owned by the underlying plaintiffs.  The underlying plaintiffs generally alleged that they contracted with Wong to improve and expand the property for the contract price of $771,000.  Wong was to finish the renovation within eight months of commencement; work commenced on or around September 30, 2005.  In the course of the repair, Wong removed the roof of the residence, allegedly without properly covering the property, thereby allowing water to intrude and damage the residence

**COMPLAINT FOR DECLARATORY RELIEF**                    **CASE NO.: C 08 00488 EMC**

1  during subsequent storms.  Additionally, the underlying plaintiffs alleged that Wong constructed the

2  building's top floor at a height in excess of that permitted by San Francisco building codes.

3        6.     The parties to the underlying action submitted their dispute to private arbitration, as

4  they were contractually obligated to do.  The arbitrator found that the owners' cost to repair the

5  property was $603,780.  He calculated this by evaluating the difference between the cost of

6  reconstruction after Wong and the other professionals left the job and the amount the owners were

7  contractually obligated to pay originally, plus the amount they actually paid for the original

8  construction.  The arbitrator rejected the owners' entitlement to carrying costs.  The arbitrator

9  determined that the diminution in value was $500,000.  Accordingly, because the diminution in value

10 was less than the cost of repair, he limited the award to $500,000.  The Interim Award is attached

11 hereto as **Exhibit "B."**

12       7.     Quanta Specialty issued a policy of insurance to "John B. Wong DBA: Boxer Group"

13 effective from October 13, 2005 until it was canceled effective December 22, 2005 due to

14 nonpayment of premium.  The policy provided comprehensive general liability protection with the

15 limits of $1 million per occurrence and $2 million in the aggregate.  The policy is attached hereto as

16 **Exhibit "C."**

17       8.     The relevant terms of the policy provide:

18            COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

19                1.     Insuring Agreement.

20                      a.     We will pay those sums that the insured becomes legally

21                            obligated to pay as damages because of "bodily injury"
                           or "property damage" to which this insurance applies.

22                            We will have the right and duty to defend the insured
                           against any "suit" seeking those damages. However, we

23                            will have no duty to defend the insured against any
                           "suit" seeking damages for "bodily injury" or "property

24                            damage" to which this insurance does not apply. . . .

25                                  . . .

26                      b.     This insurance applies to "bodily injury" and "property
                           damage" only if:

27                          (1)     The "bodily injury" or "property damage" is caused by an
                                "occurrence" that takes place in the "coverage territory";

28

**COMPLAINT FOR DECLARATORY RELIEF**          **CASE NO.: C 08 00488 EMC**

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

"Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property that is not physically injured."

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The policy excludes "property damage" as follows:

**Course of Roofing Operations Exclusion (Endorsement)**

This insurance does not apply to, and the company shall have no duty to defend:

1.     "Property damage" to any building or structure or to any property within such building or structure resulting from, caused by, or arising out of water (water includes rain, hail, sleet, or snow).

2.     Consequential damages, including loss of use, resulting from such "property damage" described above.

The policy also excludes "property damage"

**j.  Damage to Property**

"Property damage" to:

…

(4)     Personal property in the care, custody or control of the insured;

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

---

4

**COMPLAINT FOR DECLARATORY RELIEF**                    **CASE NO.: C 08 00488 EMC**

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**l.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

9.    Wong tendered the defense of the underlying action to Quanta.  Quanta acknowledged receipt and defended Wong subject to a full reservation of rights including the right to deny coverage, the right to withdraw from the defense, and the right to reimbursement of defense costs.

**A.    First Cause of Action -- Duty to Defend**

10.    Plaintiff incorporates by reference all of the allegations in paragraphs 1 through 9 of this complaint.

11.    An actual controversy has arisen and now exists between Quanta and Defendants concerning their respective rights and obligations under the Quanta policy issued to Wong.  Quanta contends it is not obligated under its policy to provide a defense to Wong for the arbitration, any challenges to any award or any judgment flowing there from because:

(1)    the underlying action does not and cannot seek damages arising from bodily injury or property damage during the policy period, caused by an occurrence,

(2)    even if the underlying action did seek damages arising from property damage, it would be excluded by the Course of Roofing Operations Exclusion, and exclusions j and l.

12.    Quanta alleges on information and belief that the Defendants dispute Quanta's contentions and maintain that the underlying plaintiffs' claims against Wong in the underlying action are covered under the Quanta policy or at least trigger a duty to defend.

13.    Quanta has no plain, speedy and adequate remedy at law.  Quanta desires a judicial determination and a declaration of Quanta's and Defendants' respective rights and duties under the Quanta policy, and alleges a declaration is both necessary and appropriate at this time.

**COMPLAINT FOR DECLARATORY RELIEF**          **CASE NO.: C 08 00488 EMC**

**B.     Second Cause of Action -- Duty to Indemnify**

14.     Plaintiff incorporates by reference all of the allegations in paragraphs 1 through 13 of this complaint.

15.     An actual controversy has arisen and now exists between Quanta and Defendants concerning their respective rights and obligations under the Quanta policy issued to Wong.  Quanta contends it is not obligated under its policy to indemnify Wong for the arbitration, or any judgment flowing there from, because:

(1)     the underlying action does not and cannot seek damages arising from bodily injury or property damage during the policy period, caused by an occurrence,

(2)     even if the underlying action did seek damages arising from property damage, it would be excluded by the Course of Roofing Operations Exclusion, and exclusions j and l.

16.     Quanta alleges on information and belief that the Defendants dispute Quanta's contentions and maintain that the underlying plaintiffs' claims against Wong in the underlying action are covered under the Quanta policy.

17.     Quanta has no plain, speedy and adequate remedy at law.  Quanta desires a judicial determination and a declaration of Quanta's and Defendants' respective rights and duties under the Quanta policy, and alleges a declaration is both necessary and appropriate at this time.

**C.     Third Cause of Action -- Reimbursement of Defense Fees**

18.     Plaintiff incorporates by reference paragraphs 1 through 17 of this complaint.

19.     Plaintiff transmitted a reservation of rights letter to Wong, reserving various rights, including the right to seek reimbursement of defense fees and costs.

20.     Plaintiff alleges the allegations and claims for damages set forth in the arbitration, even if assumed true, and the undisputed facts extrinsic to the arbitration claim, did not create or trigger a duty to defend the arbitration proceedings under the policy.

21.     Plaintiff is entitled to reimbursement of all attorneys fees and costs it expended in the defense of Wong, pursuant to *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth below:

**COMPLAINT FOR DECLARATORY RELIEF**                    **CASE NO.: C 08 00488 EMC**

## IV.   PRAYER FOR RELIEF

1.    For a declaration that Quanta is not obligated to defend Wong in the underlying action;

2.    For a declaration that Quanta is not obligated to indemnify Wong in the underlying action;

3.    For reimbursement of all attorney's fees and costs expended in the defense of Wong, according to proof;

4.    For costs of suit; and

5.    For such other relief as the court considers just and proper.

Dated:  January 18, 2008                SELVIN WRAITH HALMAN LLP


By: /s/_____
     Gary R. Selvin
     Joshua S. Leach
     Attorneys for Plaintiff
     Quanta Specialty Lines Insurance Company

48588

**COMPLAINT FOR DECLARATORY RELIEF**                **CASE NO.: C 08 00488 EMC**

1 | JOHN W. ELLIOTT (State Bar No. 61042)
2 | THOMAS A. ELLIOTT (State Bar No. 68861)
   | GREG M. MEISENHELDER (State Bar No. 236473)
3 | ELLIOTT & ELLIOTT
   | 225 W. Santa Clara Street, Suite 950
4 | San Jose, CA 95113
   | Tel: (408) 280-2160
5 | Fax: (408) 277-0804

6

7 | Attorneys for Plaintiffs: Jill Peasley, Chris Lynch,
   | Michael Fontanello

F I L E D
San Francisco County Superior Court

JUL 14 2006

GORDON PARK-LI, Clerk
BY: _____ Deputy Clerk

NO SUMMONS ISSUED PER ATTORNEY

DEC 15 2006  -9:00 AM

DEPARTMENT 212

8

9 | SUPERIOR COURT OF CALIFORNIA

10 | SAN FRANCISCO COUNTY

11
12 | JILL PEASLEY, CHRIS LYNCH, MICHAEL
   | FONTANELLO,
13 |                 Plaintiffs,
14 |         v.
15
16 | JOHN WONG dba BOXER GROUP;
   | ARCHITECTURAL DEVELOPMENT INC.;
17 | BERNARD HUANG; and DOES 1-100
   | inclusive,
18
19 |                 Defendants.
20

No. **CGC-06-454208**

COMPLAINT FOR DAMAGES FOR
BREACH OF CONTRACT;
NEGLIGENCE; BREACH OF
WARRANTY; FRAUD/DECEIT;
NEGLIGENT MISREPRESENTATION;
INTENTIONAL MISREPRESENTATION

(UNLIMITED JURISDICTION)

21 | Plaintiffs hereby allege as follows:

22 |                 **PRELIMINARY ALLEGATIONS**

23 |         1.      Plaintiffs, JILL PEASLEY, CHRIS LYNCH, MICHAEL FONTANELLO

24 | (hereinafter "Plaintiffs") are owners of the property and home located at 2848 Steiner Street in San

25 | Francisco, California.  At all times herein Jill Peasley was a resident of San Francisco County or

26 | Santa Clara County, California.  At all times herein Chris Lynch was a resident of San Francisco

27 | County or Santa Clara County, California.  At all times herein Michael Fontanello was a resident of

28 | San Francisco County, California.

---

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT; NEGLIGENCE; BREACH OF WARRANTY;
FRAUD/DECEIT; NEGLIGENT MISREPRESENTATION; INTENTIONAL MISREPRESENTATION
K:\E & E Cases\peasl-01\Pleadings\Complaint.doc

1

2.     Defendant JOHN WONG dba BOXER GROUP (hereinafter "CONTRACTOR WONG") provides general contracting services, and is a business entity of a form unknown to Plaintiffs.  Plaintiffs believe CONTRACTOR WONG is duly authorized to do business and doing business in the State of California.

3.     Defendant ARCHITECTURAL DEVELOPMENT INC., (hereinafter ARCHITECTURAL DEVELOPMENT) provides architectural and design services, and is a business entity of a form unknown to Plaintiffs.

4.     Defendant BERNARD HUANG, (hereinafter "HUANG") provides structural engineering services, and is a business entity of a form unknown to Plaintiffs.

5.     Plaintiffs are informed and believe, and thereon allege, that Defendants DOES 1-100 are business entities of a form unknown to Plaintiffs, duly authorized to do business and doing business within the State of California.

6.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1-100, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and thereon allege, that such fictitiously named Defendants are in some manner responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by said Defendants.

7.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, each of the Defendants were the agent and/or employee of the remaining Defendants and in doing the things hereinafter alleged, were acting within the scope of such agency and/or employment, and that each Defendant ratified and approved the acts of each of the remaining Defendants.

8.     As described more fully below, Plaintiffs entered into agreements, or permitted CONTRACTOR WONG, ARCHITECTURAL DEVELOPMENT, HUANG and/or DOES 1-100 to enter into agreements on the Plaintiffs' behalf, with certain Defendants to provide services, including but not limited to, architectural services, structural engineering services, building products

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT; NEGLIGENCE; BREACH OF WARRANTY; FRAUD/DECEIT; NEGLIGENT MISREPRESENTATION; INTENTIONAL MISREPRESENTATION
K:\E & E Cases\peasl-01\Pleadings\Complaint.doc

1 | and materials, and construction and renovation services, in order to renovate, remodel, and add

2 | additions the Plaintiffs' home located at 2848 Steiner Street in San Francisco, California.

3 |      9.     Plaintiffs entered into a written agreement with CONTRACTOR WONG dba

4 | BOXER GROUP on September 16, 2005 wherein CONTRACTOR WONG dba BOXER GROUP

5 | agreed to act as the general contractor with respect to the renovation, remodeling and additions to

6 | the subject residence.

7 |      10.    Construction work commenced in or around the last week of September 2005.

8 | Plaintiffs are informed and believe that in or around the first two weeks of November 2005,

9 | CONTRACTOR WONG removed the roof of the residence.

10 |      11.    As construction continued it became clear to the Plaintiffs that the renovation and

11 | remodeling work was not being diligently pursued and was of inferior quality.

12 |      12.    Furthermore, the owners had significant concerns that they were being billed for

13 | work that had not been completed in violation of the terms of the contract. Plaintiffs had additional

14 | concerns that the funds being paid to CONTRACTOR WONG as per these draw requests were not

15 | being used to pay the subcontractors and labor and material suppliers again in violation of the terms

16 | of the contracts.

17 |      13.    Subsequent to being confronted with these concerns CONTRACTOR WONG and

18 | his employees abandoned the job on or around March 27, 2006 in breach of their agreement.

19 |      14.    Upon walking off the job, CONTRACTOR WONG and/or his agents and employees

20 | left the property in a state of total chaos. The construction site was left with a tremendous amount

21 | of debris and garbage strewn throughout the site and building.

22 |      15.    As a result of CONTRACTOR WONG'S decision to remove the roof and leave the

23 | building without a roof during the time period he worked on the project, the Plaintiffs' property has

24 | been significantly damaged from water intrusion. The building itself, as well as the new and

25 | previously existing framing and construction, existing fixtures, construction materials, Plaintiffs'

26 | personal property and other property, including the hardwood floors, moldings and doors were all

27 | left exposed to the winter elements and rain and sustained damaged.

28 |

1    16.    In addition to the water damage, the construction and remodeling work that had been

2    performed by CONTRACTOR WONG and his agents and/or employees prior to walking off the job

3    was below the standard of care of a general contractor.

4    17.    Based upon Plaintiffs' preliminary investigations of CONTRACTOR WONG'S

5    work it appears that work was done without regard to leveling, aligning, plumbing and other

6    framing penetrations, code and plan required nailing, ceiling height and other normal and

7    reasonable standards of workmanship.

8    18.    Plaintiffs are also informed and believe that CONTRACTOR WONG acted

9    improperly and in breach of the written agreement when he submitted draw requests/requests for

10    payments for construction services which did not correlate with the percentage of work actually

11    completed.

12    19.    In addition to the significant water damage to the property and deficiencies in the

13    renovation and remodeling construction work itself, the Defendants, and each of them, fell

14    significantly below the standards of care in designing, managing, budgeting, sequencing and

15    scheduling of the construction.

16    20.    Plaintiffs entered into a written agreement with ARCHITECTURAL

17    DEVELOPMENT on or around August 24, 2004, in which ARCHITECTURAL DEVELOPMENT,

18    among other things, agreed to provide architectural services and designs regarding the project,

19    agreed to be responsible for establishing and implementing a construction schedule with the

20    contractor, supervise and inspect the quality and workmanship of the construction being performed

21    and approve and validate all requests for payment.

22    21.    Plaintiffs are informed and believe that ARCHITECTURAL DEVELOPMENT

23    engaged in a series design and supervision errors that caused significant damage to Plaintiffs

24    property, including but not limited to, designing the project in violation of city regulations,

25    submitting plans with design deficiencies and incorrect measurements and failing to monitor the

26    contractor, the quality of the work performed and the validity of DEFENDANT WONG'S draw

27    requests in relation to actual work performed.

28

1    22.    Plaintiffs entered into a written agreement with HUANG on December 8, 2004 to

2  provide structural engineering services, including but not limited to, structural calculations and

3  structural plans and details for the renovation, remodeling, and add additions to the subject

4  residence.

5    23.    Based upon preliminary investigations Plaintiffs are informed and believe that

6  HUANG engaged in a series of design errors, including but not limited to, designing the project in

7  violation of City regulations and submitting plans with design deficiencies and incorrect

8  measurements that have resulted in damages to Plaintiffs' property.

9    24.    Plaintiffs are informed and believe, and thereon allege, that Plaintiffs' damages

10  exceed the minimum jurisdictional amounts of this court.

11                          **FIRST CAUSE OF ACTION**
                **BREACH OF CONTRACT AGAINST JOHN B. WONG**
12                    **dba BOXER GROUP, AND DOES 1-100**

13    25.    Plaintiffs hereby refer to and reallege Paragraphs 1-24, inclusive, and incorporate

14  them by reference as though fully set forth at length herein.

15    26.    As discussed above, Defendant CONTRACTOR WONG dba BOXER GROUP, as

16  general contractor, entered into agreements with Plaintiffs, as owners of the subject property, for the

17  renovation, remodeling, and additions to the subject residence.

18    27.    The written agreement obligated the CONTRACTOR WONG to, among other

19  things, furnish all labor and materials for the construction of the project, as well as to construct and

20  complete in a good and workmanlike manner the renovation, remodeling, and additions to the

21  subject residence as fully set forth in the contract documents.

22    28.    Plaintiffs had fully and completely performed all the terms, conditions, covenants,

23  and promises of the contract with CONTRACTOR WONG prior to CONTRACTOR WONG'S

24  breach of contract, and Plaintiffs have demanded and demand performance from Defendant.

25    29.    Defendant CONTRACTOR WONG breached the terms of the written agreement by,

26  among other things, failing to complete the renovation, remodeling, and additions to the subject

27  residence; failing to perform the construction and renovation of the project in a good and

28

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT; NEGLIGENCE; BREACH OF WARRANTY;
FRAUD/DECEIT; NEGLIGENT MISREPRESENTATION; INTENTIONAL MISREPRESENTATION
K:\E & E Cases\peasl-01\Pleadings\Complaint.doc

5

1 | workmanlike manner; failing to secure and protect the work he had performed; and failing to repair
2 | and correct the damage done in the performance of the work.

3 |       30.    As a proximate result of CONTRACTOR WONG dba BOXER GROUP'S breach of
4 | contract as set forth above, Plaintiffs have suffered damages in the amount according to proof at
5 | trial including, but not limited to, the removal of mechanic's liens from the property, completion of
6 | the contracted renovation, remodeling, and additions to the property in a good and workmanlike
7 | manner; repair and replacement of damaged property, related personal property damage, damage to
8 | construction materials and other property damage to both the real and personal property/fixtures;
9 | testing and investigation of damaged property to both the residence and construction materials; loss
10 | of rents and/or income; diminution of the fair market value; additional legal and professional costs;
11 | and other incidental and consequential damages.

12 |       WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

13 | **SECOND CAUSE OF ACTION**<br>**BREACH OF CONTRACT AGAINST**
14 | **ARCHITECTURAL DEVELOPMENT, AND DOES 1-100.**

15 |       31.    Plaintiffs hereby refer to and reallege Paragraphs 1-30, inclusive, and incorporate
16 | them by reference as though fully set forth at length herein.

17 |       32.    Defendant ARCHITECTURAL DEVELOPMENT, as "architect", entered into
18 | agreements with Plaintiffs, as owners of the subject property, in which Defendant would, among
19 | other things, design plans for the renovation, remodeling, and additions to the subject residence.

20 |       33.    In addition to the contractual design requirements, ARCHITECTURAL
21 | DEVELOPMENT agreed to be responsible for, among other things, establishing and implementing
22 | a construction schedule with the contractor, supervising all design issues, inspect the quality and
23 | workmanship of the construction, overseeing all budgeting and cost issues concerning the project,
24 | as well as coordinating all permit issues for the renovation and additions to the building.

25 |       34.    Plaintiffs had fully and completely performed all the terms, conditions, covenants,
26 | and promises of the contract with ARCHITECTURAL DEVELOPMENT, and Plaintiffs have
27 | demanded and demand performance from Defendant.

28 |

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT; NEGLIGENCE; BREACH OF WARRANTY;
FRAUD/DECEIT; NEGLIGENT MISREPRESENTATION; INTENTIONAL MISREPRESENTATION
K:\E & E Cases\peasl-01\Pleadings\Complaint.doc

6

35.     ARCHITECTURAL DEVELOPMENT breached the terms of the written agreement by, among other things, negligently designing the renovations and additions to the residence, by failing to establish and implement a construction schedule with the contractor that would prevent unnecessary damage to the property, by failing to inspect the quality and workmanship of the construction, and by failing to adequately oversee the budgeting, cost and draw requests from the project under the written terms of their agreement.

36.     As a proximate result of ARCHITECTURAL DEVELOPMENT breaches of contract as set forth above, Plaintiffs have suffered damages in the amount according to proof at trial including, but not limited to, the removal of mechanic's liens from the property, completion of the contracted renovation, remodeling, and additions to the property in a good and workmanlike manner; repair and replacement of damaged property, related personal property damage, damage to construction materials and other property damage to both the real and personal property/fixtures; testing and investigation of damaged property to both the residence and construction materials; loss of rents and/or income; diminution of the fair market value; additional legal and professional costs; and other incidental and consequential damages.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION BREACH OF CONTRACT
### AGAINST BERNARD HUANG

37.     Plaintiffs hereby refer to and reallege Paragraphs 1-36, inclusive, and incorporate them by reference as though fully set forth at length herein.

38.     As discussed above, Defendant HUANG entered into a contract with plaintiffs on December 8, 2004 at act as the structural engineer and provide structural calculations, structural plans and details, and site visits and inspections for the renovation, remodeling, and additions to the property.

39.     Based upon preliminary investigations Plaintiffs are informed and believe that HUANG engaged in a series of design errors, including but not limited to, designing the project in violation of City regulations and submitting plans with design deficiencies and incorrect measurements that have resulted in damage to Plaintiffs' property.

1      40.     As a proximate result of HUANG's breaches of contract as set forth above, Plaintiffs

2 have suffered damages in the amount according to proof at trial including, but not limited to,

3 completion of the contracted renovation, remodeling, and additions to the property in a good and

4 workmanlike manner; repair and replacement of damaged property, related personal property

5 damage, damage to construction materials and other property damage to both the real and personal

6 property/fixtures; testing and investigation of damaged property to both the residence and

7 construction materials; loss of rents and/or income; diminution of the fair market value; additional

8 legal and professional costs; and other incidental and consequential damages.

9          WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

10                  **FOURTH CAUSE OF ACTION**
**NEGLIGENCE AGAINST ALL GENERAL AND SUBCONTRACTORS,**

11 **ARCHITECTS, DESIGN PROFESSIONALS AND STRUCTURAL ENGINEERS:**
**JOHN B. WONG dba BOXER GROUP, ARCHITECTUAL DEVELOPMENT,**

12 **BERNARD HUANG, AND DOES 1-100.**

13      41.     Plaintiffs hereby refer to and reallege Paragraphs 1-40, inclusive, and incorporate

14 them by reference as though fully set forth at length herein.

15      42.     By virtue of Defendants' agreements to provide goods, materials, labor, services and

16 supervision at the property and residence located at 2848 Steiner Street in San Francisco,

17 Defendants CONTRACTOR WONG, ARCHITECTURAL DEVELOPMENT, HUANG, and

18 DOES 1-100 each owed a duty to Plaintiffs to ensure that the construction, design, and

19 workmanship provided would be free from material defects, and that the contractors, architects,

20 engineers and others would perform their work, services, and supervision in a reasonable and

21 workmanlike manner.

22      43.     Each Defendant has breached its duties to the Plaintiffs and was negligent in the

23 performance of the design and construction of the project, as well as the supervision, installation,

24 budgeting and coordination of construction activities.

25      44.     As a proximate result of the negligence of Defendants, and each of them, Plaintiffs

26 have suffered damage in an amount according to proof at trial, including but not limited to, removal

27 of the mechanic's liens from the property, completion of the contracted renovation, remodeling, and

28 additions to the property in a good and workmanlike manner; repair and replacement of damaged

1   property, related personal property damage, damage to construction materials and other property

2   damage to both the real and personal property/fixtures; testing and investigation of damaged

3   property to both the residence and construction materials; loss of rents and/or income; diminution of

4   the fair market value; additional legal and professional costs; and other incidental and consequential

5   damages.

6       WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

7                            FIFTH CAUSE OF ACTION
        BREACH OF WARRANTY AGAINST JOHN B. WONG dba BOXER GROUP,
8       ARCHITECTURAL DEVELOPMENT, BERNARD HUANG AND DOES 1-100.

9       45.    Plaintiffs hereby refer to and reallege Paragraphs 1-44, inclusive, and incorporate

10  them by reference as though fully set forth at length herein.

11      46.    As alleged above, Defendants CONTRACTOR WONG dba BOXER GROUP,

12  ARCHITECTUAL DEVELOPMENT, HUANG, and DOES 1-100 entered into written agreements,

13  or agreed to provide materials, labor and/or other services pertaining to the renovation, remodeling,

14  and additions to the subject residence including the design, construction, and supervision of the

15  property so that the renovation, remodeling, and additions to the subject residence could be

16  completed and the building would achieve its intended and expected useful life.

17      47.    The above-named Defendants expressly and/or impliedly warranted that the goods,

18  services, materials, supplies, labor and supervision provided by each Defendant would be of good

19  and merchantable quality and reasonably fit for their intended purposes and that the renovation,

20  remodeling, and additions to the subject residence would be done in a careful and workmanlike

21  manner.

22      48.    Defendant CONTRACTOR WONG dba BOXER GROUP and DOES 50-60 made

23  additional expressed warranties to Plaintiffs in the written agreement.  CONTRACTOR WONG

24  made express warranties as a general contractor, including but not limited to, that all work will be of

25  good quality free from faults and defects and in conformance with the contract documents.

26  Furthermore, CONTRACTOR WONG also provided a warranty regarding damage to property

27  which includes, but is not limited to, CONTRACTOR WONG'S responsibility for damage done in

28  the performance of the work and his agreement to repair or correct such damage at his own expense.

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT; NEGLIGENCE; BREACH OF WARRANTY;
FRAUD/DECEIT; NEGLIGENT MISREPRESENTATION; INTENTIONAL MISREPRESENTATION
K:\E & E Cases\peas\-01\Pleadings\Complaint.doc

9

1      49.    Based upon the above mentioned agreements, Plaintiffs were therefore in privity

2   with Defendant's CONTRACTOR WONG, ARCHITECTURAL DEVELOPMENT, HUANG and

3   DOES1-100.

4      50.    Plaintiffs received, reviewed and relied upon the expressed and implied warranties

5   given by Defendants, and each of them, in selecting these Defendants to perform labor and services

6   on the project.

7      51.    The above-referenced warranties provided by the Defendants, have been breached as

8   the renovation, remodeling, and additions to the subject residence was not completed, is not free

9   from faults and defects, and was not performed in a workmanlike manner or as reasonably intended.

10   As discussed above, the building structure, the new and previously existing construction, the

11   construction materials and other personal property and fixtures were damaged extensively during

12   construction. There have been no attempts by the Defendants, and each of them, to repair or correct

13   such damage.

14      52.    Notice of the Defendants' breaches of warranties has been previously provided or is

15   being provided by the filing and service of this complaint.

16      53.    As a result of the Defendants' breaches of warranties, Plaintiffs have suffered

17   damage in an amount according to proof at trial, including but not limited to, removal of the

18   mechanic's liens from the property, completion of the contracted renovation, remodeling, and

19   additions to the property in a good and workmanlike manner; repair and replacement of damaged

20   property, related personal property damage, damage to construction materials and other property

21   damage to both the real and personal property/fixtures; testing and investigation of damaged

22   property to both the residence and construction materials; loss of rents and/or income; diminution of

23   the fair market value; additional legal and professional costs; and other incidental and consequential

24   damages.

25      WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

26   ///

27   ///

28   ///

**SIXTH CAUSE OF ACTION**
**FRAUD/DECEIT AGAINST JOHN B. WONG dba BOXER GROUP, ARCHITECTUAL**
**DEVELOPMENT AND DOES 1-100**

54.    Plaintiffs hereby refer to and reallege Paragraphs 1-53, inclusive, and incorporate them by reference as though fully set forth at length herein.

55.    As discussed above, Plaintiffs and Defendant CONTRACTOR WONG entered into a contract for the renovation, remodeling, and additions to the subject residence. Section one (1) of the contract set forth the terms and conditions for the payment of services rendered by CONTRACTOR WONG in performing his general contractor duties. The contractual terms provided that CONTRACTOR WONG shall invoice the owners on a monthly basis for work completed and approved by the Lender. The contract also stated that the amount of each payment shall be based on the value of the work completed and approved by the Lender and that the payment will be calculated on the work actually completed less the total of all monies previously drawn and retainer amount.

56.    During the course of construction, Defendant CONTRACTOR WONG submitted draw requests for work he claimed was completed or of which an ascertainable percentage of that work had been completed. These draw requests were in fact representations to the owners that a certain percentage of a particular aspect of the renovation, remodeling, and additions to the subject residence was completed and therefore payment, in an amount correlating to the percentage of work completed, was to be made to CONTRACTOR WONG. As per the terms of the contract, such monthly draw requests were to be calculated based upon the value of the work actually completed.

57.    Furthermore, the terms of the contract between Plaintiffs and ARCHITECTUAL DEVELOPMENT clearly stated that ARCHITECTUAL DEVELOPMENT was to be responsible for overseeing all budgeting and cost issues concerning the project as well as construction supervision and onsite review of the project. ARCHITECTUAL DEVELOPMENT failed to adequately monitor and/or supervise the budgeting, actual construction, and the validity of the draw requests being made by CONTRACTOR WONG that resulted in damages to Plaintiffs as discussed herein.

1    58.    To date Defendants CONTRACTOR WONG and ARCHITECTURAL

2  DEVELOPMENT have represented that one hundred percent (100%) of the following construction

3  services were completed, submitted draw requests based on such representations and were paid one

4  hundred percent (100%) of the fees for such services: demolition; rough grading, trench, and

5  backfill; foundation poured.  Plaintiffs believe that none of these construction services were

6  completed.

7    59.    Based upon the Plaintiff's preliminary inspection of the Defendant's work performed

8  and the draw requests submitted and paid, Plaintiff's believe that most, if not all, the draw requests

9  submitted and paid were fraudulent in that they did not accurately correlate to work actually

10  competed.  Furthermore, the funds being paid to CONTRACTOR WONG as per these draw

11  requests were not being used to pay the subcontractors and labor and material suppliers in violation

12  of the terms of the contracts.   Therefore, these representations made by the Defendant were false.

13    60.    When Defendants and their agents made the representations, they knew them to be

14  false.  Defendants made these representations with the intent to defraud and deceive the Plaintiffs

15  and to induce them to pay for services not rendered.

16    61.    At the time the representations were made by Defendants, Plaintiffs were ignorant to

17  the falsity of Defendants' representations and believed them to be true.  In justifiable reliance on

18  these representations, Plaintiffs were induced to make monthly payments based upon the

19  representations in these draw requests.  Had Plaintiffs known the true facts, Plaintiffs would not

20  have paid the draw requests to the Defendants.

21    62.    As a direct and proximate result of Defendants' false representations and their

22  subsequent failure to complete the renovation, remodeling, and additions to the subject residence,

23  Plaintiffs were forced to pay for construction and services not yet completed nor completed in a

24  reasonable workmanlike manner.  Furthermore, Plaintiffs were forced to employ the services of an

25  additional General Contractor, Architect, Structural Engineer, Forensic Expert and others in an

26  attempt to have the existing damage repaired and have the renovation, remodeling, and additions to

27  the subject residence completed in an amount not yet ascertained but which will be proved at the

28  time of trial.

12

1    63.    At all times herein mentioned, Defendants knew that the completion of the

2  renovation, remodeling, and additions to the subject residence in a timely and workmanlike manner

3  was the essential purpose of the contract.

4    64.    The conduct of the Defendants, as herein alleged, has been malicious and oppressive

5  to Plaintiffs. This conduct of Defendants was intended to deceive and cause injury to Plaintiffs.  It

6  was an intentional misrepresentation and deceitful act of the Defendants, made with the intent to

7  deprive Plaintiffs of property and legal rights or to otherwise cause injury, which justifies an award

8  of punitive damages in an amount to be determined by the trier of fact.

9    65.    As a result of the above-named Defendant's fraudulent conduct, as set forth above,

10  Plaintiffs have suffered damage in the amount to be shown according to proof at trial, including but

11  not limited to, removal of the mechanic's liens from the property, restitution of monies paid for

12  services not completed or rendered; completion of the contracted renovation, remodeling, and

13  additions to the property in a good and workmanlike manner; loss of rents and/or income;

14  diminution of the fair market value; additional legal and professional costs; and other incidental and

15  consequential damages. .

16    WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth. ·

17                    **SEVENTH CAUSE OF ACTION**
   **NEGLIGENT MISREPRESENTATION AGAINST ARCHITECTUAL DEVELOPMENT**
18                            **AND DOES 1-100**

19    66.    Plaintiffs hereby refer to and reallege Paragraphs 1-65, inclusive, and incorporate

20  them by reference as though fully set forth at length herein.

21    67.    As discussed above, Plaintiffs and Defendant ARCHITECTURAL

22  DEVELOPMENT entered into a contact in which ARCHITECTURAL DEVELOPMENT agreed

23  act as the architect with respect to the renovation, remodeling and additions to the subject residence.

24    68.    During the proposal period, contract negotiation and contract term

25  ARCHITECTURAL DEVELOPMENT represented to the Plaintiffs that they were in fact architects

26  and would be providing architectural services for the project including but not limited to providing

27  plans, designs, working drawings and specifications for the renovation, remodeling and additions to

28

---

1  the subject residence as well as scheduling and supervision of the construction and client
2  consultation.

3       69.    Plaintiffs have been informed, believe and allege that ARCHITECTURAL
4  DEVELOPMENT, its owner and employees are not licensed to practice architecture in the state of
5  California in violation of Business and Professions Code §5536(a).

6       70.    When Defendant and their agents made these representations, they were made
7  without any reasonable grounds for believing them to be true and they were made with the intent to
8  induce the Plaintiffs to rely on such representations. Based upon these representations Plaintiffs
9  were induced into hiring ARCHITECTURAL DEVELOPMENT as the architects for this project.

10      71.    At the time the representations were made by Defendant, Plaintiffs were ignorant to
11 the falsity of Defendant's representations and believed them to be true. In justifiable reliance on
12 these representations, Plaintiffs were induced to enter into a written agreement with Defendant as
13 architects in which the Plaintiff agreed pay this Defendant twelve (12%) percent of the construction
14 cost. Had Plaintiffs know the true facts, Plaintiffs would not have entered into the contract with the
15 Defendant or allowed Defendant to design, schedule and supervise on the renovation, remodeling
16 and additions to the subject residence.

17      72.    As a direct and proximate result of Defendant's false representations, Plaintiffs
18 entered into the agreement with the Defendant as discussed above and resulted in damage to the
19 subject residence. Furthermore, Plaintiffs have been forced to employ the services of an additional
20 General Contractor, Architect, Structural Engineer, Forensic Experts and others to repair the
21 existing damage as well as to have the renovation, remodeling, and additions to the subject
22 residence completed in an amount not yet ascertained but which will be proved at the time of trial.

23      73.    As a result of the above-named Defendant's negligent acts, as set forth above,
24 Plaintiffs have suffered damage in the amount to be shown according to proof at trial, including but
25 not limited to, restitution of monies paid; completion of the contracted renovation, remodeling, and
26 additions to the property in a good and workmanlike manner; loss of rents and/or income;
27 diminution of the fair market value; additional legal and professional costs; and other incidental and
28 consequential damages.

14

1   EIGHTH CAUSE OF ACTION ALLEGED IN THE ALTERNATIVE
    INTENTIONAL MISREPRESENTATION AGAINST ARCHITECTUAL DEVELOPMENT
2                          AND DOES 1-100

3       74.    Plaintiffs hereby refer to and reallege Paragraphs 1-73, inclusive, and incorporate

4   them by reference as though fully set forth at length herein.

5       75.    Plaintiffs plead this cause of action in the alternative to the seventh cause of action.

6       76.    As discussed above, Plaintiff and Defendant ARCHITECTURAL DEVELOPMENT

7   entered into a contact in which Architectural Development would act as the architect with respect to

8   the renovation, remodeling and additions to the subject residence.

9       77.    During the proposal period, contract negotiation and contract term

10  ARCHITECTURAL DEVELOPMENT represented to the Plaintiffs that they were in fact architects

11  and would be providing architectural services for the project including but not limited to providing

12  plans and designs for the renovation, remodeling and additions to the subject residence as well as

13  scheduling and supervision of the construction.

14      78.    Plaintiffs have been informed, believe and allege that ARCHITECTURAL

15  DEVELOPMENT, its owner and employees are not licensed to practice architecture in the state of

16  California in violation of Business and Professions Code §5536(a).

17      79.    When Defendant and their agents made these representations, they knew them to be

18  false, and they were made with the intent to defraud and deceive the Plaintiffs and to induce them

19  into hiring ARCHITECTURAL DEVELOPMENT as the architects for this project.

20      80.    At the time the representations were made by Defendants, Plaintiffs were ignorant to

21  the falsity of Defendant's representations and believed them to be true.  In justifiable reliance on

22  these representations, Plaintiffs were induced to enter into a written agreement with Defendants in

23  which the Plaintiffs agreed pay the Defendant twelve (12%) percent of the construction cost.  Had

24  Plaintiffs know the true facts, Plaintiffs would not have entered into the contract with the Defendant

25  or allowed Defendant to design, schedule and supervise on the renovation, remodeling and additions

26  to the subject residence.

27      81.    As a direct and proximate result of Defendant's false representations Plaintiffs

28  entered into the agreement with the Defendant as discussed above and resulted in damage to the

15

1  subject residence. Furthermore, Plaintiffs have been forced to employ the services of an additional

2  General Contractor, Architect, Structural Engineer, Forensic Experts and others to repair the

3  existing damage as well as to have the renovation, remodeling, and additions to the subject

4  residence completed in an amount not yet ascertained but which will be proved at the time of trial.

5       82.    The conduct of the Defendants, as herein alleged, has been malicious and oppressive

6  to Plaintiffs and was intended to deceive and cause injury to Plaintiffs. It was an intentional

7  misrepresentation and deceitful act of the Defendants, made with the intent to deprive Plaintiffs of

8  property and legal rights or to otherwise cause injury, which justifies an award of punitive damages

9  in an amount to be determined by the trier of fact.

10       83.    As a result of the above-named Defendant's fraudulent acts, as set forth above,

11  Plaintiffs have suffered damage in the amount to be shown according to proof at trial, including but

12  not limited to, restitution of monies paid; completion of the contracted renovation, remodeling, and

13  additions to the property in a good and workmanlike manner; loss of rents and/or income;

14  diminution of the fair market value; additional legal and professional costs; and other incidental and

15  consequential damages.

### PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

1. Compensatory damages according to proof;

2. Monetary damage due to repair and complete the renovation, remodeling, and additions to the subject residence, related damaged property and materials of construction and other property damage;

3. Monetary damage due to testing and investigation of the property, construction, and construction materials;

4. Monetary damage due to loss of rents and/or income;

5. Monetary damage due to diminution in fair market value;

6. Monetary damage due to professional costs;

7. Consequential damages according to proof;

8. Punitive damages according to proof;

16

9.    For prejudgment interest at the legal rate;

10.    For attorney's fees, costs, and litigation expenses incurred herein; and,

11.    For such other and further relief as the Court may deem just and proper.

ELLIOTT & ELLIOTT

Dated: July __11__, 2006

JOHN W. ELLIOTT
THOMAS A. ELLIOTT
GREG E. MEISENHELDER
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT; NEGLIGENCE; BREACH OF WARRANTY;
FRAUD/DECEIT; NEGLIGENT MISREPRESENTATION; INTENTIONAL MISREPRESENTATION
K:\E & E Cases\peasl-01\Pleadings\Complaint.doc

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

HERBERT LEW
3908 Mission Street
San Francisco, CA 94112
TELEPHONE NO.: (415) 585-6376   FAX NO.:
ATTORNEY FOR (Name): IN PRO PER

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

**F I L E D**
San Francisco County Superior Court

JUL 1 7 2006

GORDON PARK-LI, Clerk
BY: _____

CASE NAME:
LEW v. FARJAT, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☐ Unlimited (Amount demanded exceeds $25,000) | ☑ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | CGD-06-618868 |
| | | | JUDGE:<br>DEPT: |

Items 1–5 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☑ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve       e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence       f. ☐ Substantial postjudgment judicial supervision
3. Type of remedies sought (check all that apply):
   a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify): 1
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)
Date: July 17, 2006

HERBERT LEW
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2006] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 201.8, 1800–1812;<br>Standards of Judicial Administration, § 19<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.USCourtForms.com

SUM-130

# SUMMONS
## (CITACION JUDICIAL)
### UNLAWFUL DETAINER—EVICTION
### (RETENCIÓN ILÍCITA DE UN INMUEBLE—DESALOJO)

| | FOR COURT USE ONLY |
|---|---|
| | (SOLO PARA USO DE LA CORTE) |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WENDY FARJAT and DOES 1 TO 5

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
HERBERT LEW

You have 5 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. (To calculate the five days, count Saturday and Sunday, but do not count other court holidays. If the last day falls on a Saturday, Sunday, or a court holiday then you have the next court day to file a written response.) A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 5 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. (Para calcular los cinco días, cuente los sábados y los domingos pero no los otros días feriados de la corte. Si el último día cae en sábado o domingo, o en un día en que la corte esté cerrada, tiene hasta el próximo día de corte para presentar una respuesta por escrito). Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.

| | |
|---|---|
| 1. The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SAN FRANCISCO SUPERIOR COURT<br>400 McAllister Street, San Francisco, CA 94102 | CASE NUMBER:<br>*(Número del Caso):*<br>CUD 06-618868 |

2. The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
HERBERT LEW, In Pro Per        (415) 585-6376
3908 Mission Street
San Francisco, CA 94112

3. *(Must be answered in all cases)* An unlawful detainer assistant (Bus. & Prof. Code, §§ 6400–6415) [✓] did not [ ] did for compensation give advice or assistance with this form. *(If plaintiff has received any help or advice for pay from an unlawful detainer assistant, complete item 6 on the next page.)*

| Date:<br>*(Fecha)* | JUL 17 2006 | GORDON PARK-LI, Clerk,<br>*(Secretario)* | CRISTINA LAQUISIA , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

4. **NOTICE TO THE PERSON SERVED:** You are served
  a. [✓] as an individual defendant.
  b. [ ] as the person sued under the fictitious name of *(specify):*
  c. [ ] as an occupant
  d. [ ] on behalf of *(specify):*
    under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
    [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
    [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
    [ ] CCP 415.46 (occupant)    [ ] other *(specify):*
5. [ ] by personal delivery on *(date):*

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
SUM-130 [Rev. January 1, 2004]

**SUMMONS—UNLAWFUL DETAINER—EVICTION**

Code of Civil Procedure, §§ 412.20, 415.456, 1167

American LegalNet, Inc.
www.USCourtForms.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

JOHN W. ELLIOTT (#61042) THOMAS A. ELLIOTT (#68861)
MARK S. SANDBERG (#207556) GREG E. MEISENHELDER (#236473)
ELLIOTT & ELLIOTT
225 W. SANTA CLARA STREET, SUITE 950
SAN JOSE, CA  95113
TELEPHONE NO.: (408) 280-2160   FAX NO.: (408) 277-0804
ATTORNEY FOR *(Name):* Plaintiff

**F I L E D**
San Francisco County Superior Court

JUL 14 2006

GORDON PARK-LI, Clerk
BY: _Vickie E. Bautista_
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McALLISTER STREET, ROOM 205
MAILING ADDRESS:
CITY AND ZIP CODE: SAN FRANCISCO, CA  94102
BRANCH NAME:

CASE NAME: JILL PEASLEY, CHRIS LYNCH, MICHAEL FONTANELLO v. JOHN WONG
dba BOXER GROUP; ARCHITECTURAL DEVELOPMENT, BERNARD HUANG AND DOES 1-100

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | | CGC-06-454208 JUDGE: DEPT: |

*Items 1-5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[X] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[X] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812 )**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not    complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Type of remedies sought *(check all that apply):*
   a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):*  8
5. This case [ ] is [X] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: July 11, 2006

Greg E. Meisenhelder
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19

DEC 1 9 2007

RBL 2475

1  Hon. Laurence K. Sawyer (Ret.)
2  JAMS
   Two Embarcadero Center, Suite 1500
3  San Francisco, CA 94111
   Telephone: (415) 982-5267
4  Fax: (415) 982-5287

5

6  ARBITRATOR

7

8                                    JAMS

9
                                              JAMS Ref. No: 1100049331
10 JILL PEASLEY, et al

11              Claimants,                     **INTERIM AWARD**

12        Vs

13 JOHN WONG, et al

14              Respondents.

15

16

17      Arbitration in the above matter came on for hearing (Phase 1) in San Francisco on

18 October 29 through November 2, 2007.  Following the taking of evidence and final briefing

19 of counsel, the arbitrator took the matter under submission on December 7, 2007.  Based

20 upon the evidence submitted and argument of counsel, the arbitrator now makes the

21 following interim award.

22                                    FACTS

23      The real property located at 2848 Steiner Street in San Francisco was purchased by

24 the claimants in December of 2003, for $2.3 million.  Several years before this purchase, Jill

25 Peasley had been referred to Architectural Development (hereafter "A.D.") by her realtor

26

27

28

                                                                            1

INTERIM AWARD-Peasley vs. Wong, Reference No.  1100049331

Carol Goldberg in connection with a proposed remodel of a house that she and Chris Lynch owned on Jackson Street in San Francisco. She met with both Gary Jerabeck and Rajat Randev of A.D. and eventually hired them to draw plans but then sold the property without doing the remodel. Before the purchase of the Steiner Street property, she met with Mr. Jerabeck several times to look at various properties and discuss the design value of the property. Mr. Jerabeck walked through the Steiner Street property with Ms. Peasley, and they talked about increasing the square footage by adding a third floor and otherwise remodeling the property. After the claimants bought the property, they hired A.D. to design the remodel. The parties signed a contract in August of 2004 (Exhibit 1) which described the scope of work undertaken by A.D. Mr. Randev was the "project manager" and initially visited the property to take measurements. With the help of another employee of A.D., he measured the entire property including the existing height by tape measure and then prepared CAD drawings of the existing structure. Although a number of layout options were prepared, eventually two plans were submitted to Bernard Huang, the structural engineer. After various changes were made, Mr. Huang stamped the plans because neither Mr. Jerabeck nor Mr. Randev was licensed, and the City required that a licensed person stamp the plans. The plans were then submitted to the City for review, and also A.D. sent out copies of the plans for bid. At the suggestion of Mr. Randev, Boxer Group was asked to bid on the project, and their bid came back approximately $200,000 lower than other bids. The bid was discussed with Ms. Peasley, and there is some discrepancy as to whether Ms. Peasley was informed by Mr. Jerabeck with regard to his concern about the feasibility of the bid, but Ms. Peasley decided to accept the bid. The claimants entered into a contract with

2

Boxer Group in September, 2005 (Exhibit 2), and the work started in late September. According to John Wong of Boxer Group, Ms. Peasley selected the eight-month completion date and although he thought it was aggressive, he felt it was doable.

Within the first month of work, Mr. Jerabeck noticed that the project was falling behind schedule. According to Mr. Jerabeck, Ms. Peasley was made aware of the delay by e-mail and at weekly site meetings. According to Mr. Wong, his work was slowed down because there were many discrepancies in the plans "from the ground up." The placement and thickness of foundation, bearing beams and posts were all off measurement. Mr. Randev visited the site at least fifty times, and almost everyday in the beginning since he kept getting calls from Boxer Group for clarifications.

In November, the roof was removed. According to Mr. Wong, the third floor addition was the "meat" of the entire project, and he needed to remove the roof to get the job done on time. Mr. Wong admits that he did receive information from Mr. Randev about "hip-wrapping" the project to protect it from rain. But Mr. Wong felt that hip-wrapping would get in the way of his work, and thus he decided to use tarps. According to Mr. Wong, it was a bad winter, with lots of wind and rain. As a result, the entire property suffered extensive water intrusion (Exhibit 5) and damaged the existing structure on every floor as well as new materials on site. Mr. Wong was candid to admit that he was responsible for any water damage that occurred.

After the first of the year, Ms. Peasley learned that the job had been shut down because the crew had not been paid. She also learned that some material suppliers had not been paid and were planning to lien the job. Mr. Wong admits he was having cash flow

3

problems and having trouble paying for labor and materials.  He notified Ms. Peasley about

his financial problems by e-mail in early March (Exhibit 27) and assured her he would

provide lien releases.  Eventually, Ms. Peasley started writing joint checks to Mr. Wong and

his employees.  Mr. Wong agreed to accept the checks so that his employees could get paid

(Exhibit 23).  The last draw request in the amount of $74,100 (Exhibit 41) was used by Ms.

Peasley to pay off liens, but it did not cover all of the liens which totaled almost $130,000

(Exhibit 60).

Mr. Wong left the job in early April because he was not getting paid.  He

acknowledges that he was paid approximately $140,000 over the course of the work.  The

first Notice of Violation relating to the height of the third floor was issued by the City on

March 22, 2006.  The N.O.V. occurred as a result of a neighbor who complained that a

framed wall for the third floor exceeded the height limitation.  According to Mr. Jerabeck,

the wall included a thirty-inch parapet wall which had been mistakenly required by the City

for fire protection.  The City allowed the parapet wall to be removed, but the neighbor

continued to complain.  The City inspector came to the site several times, took

measurements but allowed the work to continue.  Finally, the City issued the N.O.V. on

March 22, 2006, because the building height exceeded the approved plans.  The N.O.V.

required that the third floor height must meet the approved plans or new plans be submitted

showing "as built."  A subsequent N.O.V. advised that all work on the third floor must stop

until the issue was resolved (Exhibit 18) thus allowing work to continue on the other floors.

The Building Department  also required a survey to determine the height of the building.  A

survey was obtained which confirmed that the height of the third floor addition exceeded the

4

approved height by approximately twelve inches (Exhibit 19). Mr. Jerabeck suggested to

Ms. Peasley that the second floor could be lowered by use of hydraulic jacks within thirty

days and at a cost of $10,000, but Ms. Peasley rejected the plan since she was told that the

plan was not feasible and that she needed to go through the permit process again.

After the Notice of Violation was issued, Ms. Peasley hired Ilene Dick, a land use

attorney, to assist her in resolving the height issue. Ms. Dick met with the City officials and

learned of their concern that what was built did not comply with the height on the "as

approved" plans. She was also involved in hiring Patrick Buscovich, a structural engineer,

and Bruce Bonacker, an architect, who were capable of preparing plans that would be

acceptable to the City and withstand CEQA review in the event that neighbors appealed.

Mr. Jerabeck told her about his plan to lower the second floor without a new permit, but she

felt that this plan would trigger a 311 procedure, and in any event, a new permit was

required. Ms. Dick also met with the complaining neighbor (Mrs. Roth) to discuss her

concerns and try to reach a settlement. By July 9, 2006, she learned that a new 311 would

not be required, and on July 14, she learned that Mrs. Roth would not appeal if the height

did not exceed the additional height as shown on the "as approved" plans. Ms. Dick filed

two applications, one for an "as is" permit and the other for an "as approved" permit to

make sure that the claimants got what they wanted. On September 1, 2006, the "as

approved" permit was issued by the city and Ms. Dick felt that the six-month period from

the N.O.V. to the issuance of the permit was amazingly short.

After Boxer Group left the job, Ms. Peasley hired Don Thompson to clean up the

property and document damage. She also hired Gavin Construction to complete the

5

construction.  Angus Gavin met with Ms. Peasley in the Spring of 2006 and also talked to

Mr. Thompson about damage he observed.  Mr. Gavin understood that he was going to work

off of A.D.'s plans, with some changes.  He prepared his bid off of A.D.'s plans, but his bid

was higher than the Boxer Group bid because it included repair of work that Boxer had done

wrong.  His contract with claimants was not prepared until September 25, 2006 (Exhibit 55)

after the permit was issued, but he did as much as he could on the first and second floor

from the time he was hired in the Spring until the permit was issued.  Mr. Gavin removed

about 50% of Boxer's framing on the first floor because of water damage or improper work.

He removed all of the framing on the second and third floor because it had to be rebuilt to

the correct height, but also some of the work was water damaged or incorrect.  About 90%

of Boxer's plumbing had to be removed because it was either in the wrong location or not

roughed in correctly.  Mr. Gavin also found that concrete was not poured correctly and that

tie-downs were not put in correctly.  He observed that framing was not level, things were not

the right height or right thickness and some things were not nailed at all.  Truss joists had to

be removed to lower the floor and also because they were water damaged.  Chimneys and

hardwood floors could not be reused because of water damage.  All floors had to be re-

leveled and steel beams had to be re-welded to pass inspection.  Both Mr. Gavin and Ms.

Peasley acknowledged that some work performed by Gavin Construction was outside the

original scope of work assumed by Boxer Group.  Exhibit 61 reflects the changes which

were not within the scope of Boxer's work (highlighted in blue or yellow) totaling

approximately $74,000.  Mr. Gavin substantially completed the work in June 2007.

Claimants anticipated that they would sell the property in May 2006 for a price in the upper

6

$4 million.  They actually sold the property in the summer of  2007 for $6 million.


LIABILITY

1. Nonsuit:

Following completion of the claimants evidence, A.D. moved for nonsuit as to each

cause of action in the complaint under C.C.P. § 581(c).

A defendant is entitled to nonsuit after the plaintiff's evidence is presented only if

the trial court determines, as a matter of law, the evidence is insufficient to permit the trier

of fact to find in the plaintiff's favor.  Ewing v. Northridge Hospital (2004) 120 Cal. App.

4th 1289, 1296.  With regard to the cause of action for breach of contract and the cause of

action for negligence, the motion is denied.  The claimants have presented sufficient

evidence to permit the arbitrator to find in their favor on theses causes of action.  In

particular, the testimony and report of Christopher Raker provided evidence that A.D.

breached the contract with the claimants and fell below the applicable standard of care in the

following manner:

1. A.D.'s drawings lacked construction dimension for new or existing work at levels

below the third floor and for heights of stories or floor assemblies; instruction details, with

regard to stairs, waterproofing, parapets and decks were not provided; and grid systems for

architectural and structural documents did not correlate.

2. The plans did not provide a reference or survey point from which to take

measurements which resulted in the third floor addition being built twelve inches above the

height permitted by the City and led to the issuance of the Notice of Violation.

INTERIM AWARD-Peasley vs. Wong, Reference No.  1100049331

1    The arbitrator is also convinced that there is sufficient evidence to find that the

2    negligence described above caused damage to the claimants, through the testimony of Mr.

3    Raker, Mr. Thompson and Mr. Gavin.

4

5    With regard to the cause of action for breach of implied warranty, the motion is

6    granted as to A.D.  According to their contract, A.D. provided architectural or design

7    services, and it is well settled that where the primary objective of a transaction is to obtain

8    services, the doctrine of implied warranty and strict liability do not apply. Huang v. Gardner

9    (1984) 157 Ca. 3rd 404, 413 (footnote 5); Stuart v. Crestview (1973) Cal. App. 3rd 802,

10

11   811-812.

12   With regard to the causes of action for negligent and intentional misrepresentation of

13   fact, the motion is granted.  Although there is sufficient evidence that A.D. misrepresented

14

15   itself as architects and that claimants relied upon this misrepresentation in hiring A.D. to

16   design the remodeling of the Steiner Street property, there is not sufficient evidence that this

17   misrepresentation caused any damage.  A complete causal relationship between the fraud

18   and the plaintiff's damages is required.  Williams v. Wraxall (1995) 33 Cal. App. 4th 120,

19   131-132; Service by Medallion, Inc. v. Chlorox (1996) 44 Cal. App. 4th 1807, 1818.  There

20

21   is evidence that A.D.'s failure to comply with the standard of care required of architects or

22   designers resulted in damage to the claimants by the testimony and report of Mr. Raker, but

23   nowhere in his testimony or report (Exhibit 54) does he attribute any loss or damage to the

24   misrepresentation or to the claimants reliance on the misrepresentation.  Thus, the  arbitrator

25   concludes that the claimants have failed to prove a necessary element of their fraud causes

26   of action.

27

28

8

2. Height Issue:

The third floor addition constructed by Boxer Group exceeded the forty-foot height limitation imposed by the City by approximately twelve inches (Exhibit 19). This violation of the City Code led to the issuance of a Notice of Violation (Exhibit 18) and resulted in the necessity to obtain a new permit, reconstruction of the building and delay of the project. The discrepancy in the height was caused by the negligence of both A.D. and Boxer Group. With regard to A.D., the plans showed an existing height of thirty-six feet, ten and three-quarter inches and a proposed height increase of three feet and two inches (Exhibit 17, page 4 a), but the expert testimony has demonstrated that the plans were deficient in not giving sufficient measurements to Boxer Group so that it could build the addition to the correct height. Both Mr. Raker and Mr. Houghton testified that the plans failed to include a reference datum point from which additional measurements could be taken so that the floor-to-floor heights could be determined and thereby assure that the forty-foot building height was not exceeded (Raker testimony, page 499-500, page 501-502; Houghton testimony page 1036-1038). Additionally, A.D. failed to properly supervise the design issue on the site. While there is evidence that Mr. Jerabeck did try to resolve the issue with the City, Mr. Foster of the Boxer Group testified at deposition that he was told by Mr. Randev to "just get the roof built before anyone really notices that his plans don't represent that his height is incorrect." Foster deposition, page 188.

With regard to Boxer Group, they were told by the A.D. plans that the increase height had to be three feet, two inches above the existing height of the building. Yet the survey shows that the constructed height was four feet, two and three eighths inches above

9

the existing height of the building (Exhibit 19). Thus, Boxer Group was negligent in failing to follow the plans or failing to obtain clarification from A.D. as to the height of the third floor addition. As stated by Don Thompson, the dimensioning in the plans was so poor that the Boxer Group should have stopped and asked a question about the precise height of the third floor (page 351).

3. Other Designs or Construction Deficiencies:

With regard to the plans drawn by A.D., Mr. Raker testified that there was a panoply of dimensions missing that made it very difficult to build and which led to many site visits to correct the dimensions (pages 506-507). Mr. Raker also noted a failure of the structural grid to agree with the architectural grid, which also makes it difficult for the contractor to build (page 507-508). Furthermore, according to Raker, the plans failed to provide direction as to the construction of vertical duct work (page 512).

With regard to the quality of the work by Boxer Group, both Mr. Thompson and Mr. Gavin testified as to numerous construction deficiencies that had to be corrected. In particular, Mr. Thompson, who inspected the work shortly after Boxer Group left the job, found substantial amount of trash and extensive water damage to the existing structure as well as new materials (pages 261-263). He also found that structural beams were not welded correctly (page 263), that the floors were not level (page 265), there was no access for heating ducts (page 267), beams had been hacked for plumbing (page 267), other than a blue tarp, there was no attempt to water proof (page 269) and light fixtures, fireplace mantel, and ornamental molding were not protected and mixed up with construction debris (page 282). Additionally, Mr. Thompson reviewed extensive photographs (Exhibit 7) and pointed

10

out numerous construction deficiencies and damage due to water intrusion.

According to Mr. Gavin, most all of Boxer Group's work had to be removed because of water damage and construction deficiencies, but admittedly the second and third floor work also had to be removed because of the height issue (pages 403-404). Also 90% of the plumbing had to be removed (page 405). He also observed that concrete was not poured properly, tie downs were incorrectly installed, framing was not level, wrong lumber was used, and some things were not nailed at all (pages 408-409).

In summary, the arbitrator finds that the deficiencies in construction were the result of defective plans prepared by A.D. and inferior workmanship by Boxer Group. The work performed by both respondents fell below the standard of care in the industry. While it is true that Boxer alone was responsible for the water intrusion and damage resulting from the water intrusion, the damage resulting from design/construction deficiencies and water intrusion is indivisible, as discussed below.

## DAMAGES

As a general rule, the plaintiff in a suit for negligent damage to real property is allowed to recover either the cost of repair or the diminution in property value, whichever is less. Safeco v. J & D Painting (1993) 17 Cal. App. 4th 1199, 1202; Ferraro v. Southern California (1980) 102 Cal. App. 3rd 33, 49-50; Mozzetti v. City of Brisbane (1977) 67 Cal. App. 3rd 565, 576. The question then is whether the cost of repair or the diminution in value should be the proper measure of damages in this case.

1. Cost of Repair:

In calculating the cost of repair, the following methodology would appear to be

11

appropriate in this case.  The claimants should be entitled to recover the cost of

reconstruction after respondents left the job, less the amount that claimants would have been

obligated to pay for the original job, plus the amount that they actually did pay for the

original construction.  Claimants contend that the reconstruction cost is $1,279,572 (Exhibit

65).  However, the cost of work outside the scope of the original work ($74,000) should be

deducted.  Additionally, the arbitrator is of the opinion that the cost of "Interiors-Colleen

Keller" in the amount of $47,511 appears to be an item beyond the scope of the original

work.  Accordingly, the arbitrator finds that the reconstruction cost is $1,158,061.

Deducting the amount of $884,492 that the plaintiffs were obligated to pay for the original

work, the increased construction costs to finish the job is $273,569.  Claimants are entitled

to a credit for the amount they did pay for the original work since they have already been

charged above for the amount they were obligated to pay.  Adding $330, 211 to $273,569,

the claimants cost of repair is $603,780.

      With regard to the "carrying costs" listed on Exhibit 65, the arbitrator is of the

opinion that the claimants are not entitled to recover these costs.  These so called "carrying

costs" appear to be recurrent living expenses which claimants would be obligated to pay

regardless of whether they were injured by the respondents.  In other words, interest

payments (whether paid on a construction loan or a take-out loan), property taxes, insurance,

etc., would have been paid by the claimant regardless of whether they remained at the

Steiner Street property or sold the prop and moved elsewhere after May of 2006.

Furthermore, the case cited by the claimants, Shaffer v. Debbas (1993) 17 Cal. App. 4th 33,

does not support their position that they are entitled to recover these "carrying costs."  The

12

arbitrator will allow the interest on personal loans in the amount of $3065 since these do not

appear to be recurrent living expenses.  Thus, the total recoverable cost of repair is

$606,845.

2.  Diminution in Value:

The diminution in value is measured by the difference in the value of the property

immediately before and after the injury.  Ferraro v. Southern California, supra at 49;

Mozzetti v. City of Brisbane, supra at 576.  In the Ferraro case, several buildings on the

plaintiff's property were destroyed by a gas explosion.  The cost of reconstruction was

approximately $90,000 and expert testimony established diminution in value of the property

at  $57,000.  The plaintiff objected to the judge's instruction that the measure of damages

was the difference between the fair market value of the property immediately before the

destruction and the fair market value immediately after the destruction.  However, the

appellate court found the instruction was appropriate since it was consistent with the general

rule that the lesser of the cost of repair or diminution in value is the proper measure of

damage to real property.  Id. at 50.  In the course of the discussion, the court addressed the

issue as to whether the proper date of evaluation of the destroyed property was the time of

destruction or time of trial.  The plaintiff argued that the time of trial should be the date of

evaluation as in inverse condemnation proceedings.  However, the court rejected this

argument and held that the diminution in value is the difference in the value of the real

property immediately before and after the injury.  Id. at 49.

In our case, the respondents argue that the date of evaluation should be measured as

of the date of the 2007 sale of the property.  However, as pointed out by the Ferraro Court,

13

this is not an appropriate way to calculate diminution in value since it is a date long after the

damage to the property and after the property has been repaired.  In Safeco v. J & D

Painting, supra,  the court rejected an argument that the plaintiff should be entitled to

recover not only the cost of repair but the decline in market value of the damaged home

during the five-month period it was being repaired.  Id. at 1203.  So in our case, the

respondents should not be able to successfully argue that an increase in market value during

the period of repair should be considered in determining the diminution in value of the

property.

Since diminution in value is measured as the difference in value immediately before

and immediately after the injury, the question then is whether there was a diminution in

value between the time that the respondents started work (September 2005) and the time the

respondents left the job (April 2006).  The only expert testimony offered in this case is the

declaration of Andrew Wells who opines that there was a diminution in value between

9/1/05 and 4/1/06 in the amount of $500,000.  See Declaration of Andrew Wells dated

November 5, 2007.

Since the diminution in value is less than the cost of repair, the diminution in value

should control as to the measure of damages in this case.

3.  Joint and Several Liability:

Under California law, defendants may be held jointly and severally liable when there

is one indivisible injury caused by two or more parties.  Bobrow/Thomas v. Superior Court

(1996) 50 Cal. App. 4th 1654, 1661.  As indicated above, the arbitrator has concluded that

both respondents were negligent in the construction and design of the remodel project as

14

1  alleged by the claimants in their fourth cause of action. Two issues have been raised as to

2  whether respondents are jointly and severally liable for the damages suffered by the

3  claimants. First, there appears to be a contention that the claimants cannot recover in tort for

4  breach of duties that merely restate contractual obligations, as set forth in Asa v. Superior

5  Court (2000) 24 Cal. 4th 627. In the Asa case, the Supreme Court was confronted with the

6

7  issue of whether homeowners could sue the developers on a theory of negligence for

8  construction defects which had not resulted in property damage. The Court held that the

9  homeowners could not maintain such a tort action because a person may not ordinarily

10 recover in tort for breach of duties that merely restate contractual obligations. However, the

11

12 court pointed out that conduct amounting to breach of contract becomes tortious when it

13 violates a duty independent of the contract arising from principles of tort law and that such

14 an independent duty is recognized in those negligence cases which hold the homebuilder

15

16 liable for construction defects causing property damage. Id. at 643. Thus, in our case, the

17 defects in design and construction which resulted in property damage to the claimants give

18 rise to a cause of action for negligence against the respondents independent of their

19

20 contractual obligations to the claimants.

21    The second issue raised by respondents is whether there is an indivisible injury

22 which gives rise to joint and several liability of respondents. While it can be argued that

23 A.D. was not responsible for rain damage caused by Boxer Group's failure to protect the

24 property from rain and that Boxer Group was not responsible for damages caused by plan

25

26 deficiencies, the facts show that the injury to the claimants is indivisible. The repair

27 undertaken by Gavin Construction involved removal of 50% of Boxer Group's work on the

28

15

first floor and all of his work on the second and third floors, mainly to build at the correct

height but also because it was built incorrectly and was water damaged (page 403-404).

Although Mr. Gavin did testify that the first floor work was due to damage rather than

height, he could not allocate between damage and height issues with regard to the second

floor (pages 452-453).  Furthermore, even if there was some way to separate damage from

height, it is simply not possible to divide or allocate the repair between height, water damage

and incorrect design and/or construction.  Furthermore, all of the injury to the claimants

whether it involved the height issue, water damage or incorrect design/construction,

contributed to the delay of the project and the damages resulting from the delay.  Thus, the

arbitrator concludes that the claimants' injury was indivisible and that the respondents are

jointly and severally liable for the damages suffered by the claimants.

CONCLUSION

The defendants are jointly and severally liable to the claimants for damage to their

real property which resulted from the negligent design and construction of the remodel

project on the claimants' property.  The claimants are entitled to recover from the

respondents the diminution in value of their property in the sum of $500,000.

The evidence presented at the arbitration hearing fails to demonstrate any breach of

contract or other culpable conduct on the part of the claimants.  Thus,  respondent's cross

actions for recovery of damages are denied.

The parties are directed to contact the arbitrator's case manager to arrange for a

further telephone conference in order to discuss the second phase of this arbitration.

16

1   Dated: _12/14/07_

                           Hon. Laurence K. Sawyer (Ret.)

2

                           Arbitrator

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   INTERIM AWARD_Peasley vs. Wong, Reference No. 1100049331

                                                            17

## PROOF OF SERVICE BY FACSIMILE & U.S. MAIL

Re: Peasley, Jill, et al. vs. Wong, John dba Boxer Group, et al.
Reference No. 1100049331

I, SARAH NEVINS, not a party to the within action, hereby declare that on

December 17, 2007 I served the attached INTERIM AWARD on the parties in the within action

by facsimile and depositing true copies thereof enclosed in sealed envelopes with postage thereon

fully prepaid, in the United States Mail, at San Francisco, CALIFORNIA, addressed as follows:

Gregory E. Meisenhelder Esq.
Elliott & Elliott
225 W. Santa Clara St.
Ste. 950
San Jose, CA 95113
Tel: 408-280-2160
Fax: 408-277-0804

Timothy J. Halloran Esq.
Murphy, Pearson, Bradley & Feeney
88 Kearny St.
10th Floor
San Francisco, CA 94108
Tel: 415-788-1900
Fax: 415-393-8087

Summer M. Smith Esq.
Murphy, Pearson, Bradley & Feeney
88 Kearny St.
10th Floor
San Francisco, CA 94108
Tel: 415-788-1900
Fax: 415-393-8087

Jeffrey Allen Chadic Esq.
Boornazian, Jensen & Garthe
555 12th Street
Suite 1800
Oakland, CA 94607
Tel: 510-645-2029
Fax: 510-839-1897

Peter L. Weber Esq.
Murphy, Pearson, Bradley & Feeney
88 Kearny St.
10th Floor
San Francisco, CA 94108
Tel: 415-788-1900
Fax: 415-393-8087

I declare under penalty of perjury the foregoing to be true and correct. Executed at

San Francisco, CALIFORNIA on December 17, 2007.

_____
SARAH NEVINS
JAMS The Resolution Experts

| √ | **Quanta Specialty Lines Insurance Company**<br>Administrative Office<br>10 Rockefeller Plaza, 3rd Floor<br>New York, NY 10020<br>212-373-1800 | **COMMON POLICY<br>DECLARATIONS** |
|---|---|---|

**Policy No.:** BTC8020945-05

Renewal of:

**Producer:** LAE Insurance Services, Inc.
2999 Douglas Blvd., suite 115
Roseville, CA 95661

Business Description: Artisan Contractor

Producer Code:

Type of Business: SOLE PROPRIETOR INDIVIDUAL          Audit Period: Annual

**Named Insured & Address:** John B. Wong DBA: Boxer Group

Physical Address:                         Mailing Address:

254 5th Street                            P.O. Box 590603
San Francisco, CA 94118                   San Francisco, CA 94159

**Policy Period:** from 10/13/2005 to 10/13/2006 at 12:01 A.M. standard time at your mailing address above.
                        [Inception date]      [expiration date]

**Coverage Forms that form a part of this policy:**

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| **Coverage Parts** | **Premium** |
|---|---|
| Commercial General Liability Coverage Part | $   13,813 |
| Commercial Property Coverage Part | |
| Commercial Inland Marine | 500 |
| Terrorism - Certified Acts | |
| Inspection / Loss Control Fee | |
| Policy Fee | 175 |
| **TOTAL POLICY PREMIUM:** | $   14,488 |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Forms Applicable To All Coverage Forms:** (SEE "CGL FORM 00 QA 06/2005" and "IL 09 85 01 03")

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Countersigned: _____     by: _____
                        Date                              Authorized
                                                          Representative

Issuing Office:  Builders & Tradesmen's Ins. Services,          Issued Date: 10/26/2005
2999 Douglas Blvd., suite 115, Roseville, CA 95661

| COM 0001D 00 Q2 06/2005 | | | Page 1 of 1 |
|---|---|---|---|

In Witness Thereof, the issuing Company has caused this policy to be signed officially below.

Tobey J. Russ
President

Martha G. Bannerman
Secretary

Quanta Specialty Lines
Insurance Company

QSLIC-POL-001 (02/04)

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

☑ OCCURRENCE FORM (CG 00 01)

☐ OCCURRENCE FORM WITH MANIFESTATION PROVISION (CGB 0014 00 QA)

| | | |
|---|---|---|
| **Policy No.:** BTC8020945-05 | **Renewal of:** | **Effective Date:** 10/13/2005 |

***Named Insured:*** John B. Wong DBA: Boxer Group

**Form of Business:** SOLE PROPRIETOR OR INDIVIDUAL          **Audit Period:** Annual

**Each paid claim for the following coverages reduces the amount of Insurance we provide during the applicable coverage period.**

### LIMITS OF INSURANCE

| Coverage | | Limits of Insurance |
|---|---|---|
| General Aggregate (other than Products/Completed Operations) | $ | 2,000,000 |
| Products/Completed Operations Aggregate | $ | 2,000,000 |
| Personal & Advertising Injury Limit (Any One Person or Organization) | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Damage to Premises Rented to You (Any One Premises) | $ | 50,000 |
| Medical Expense Limit (Any One Person) | $ | 5,000 |

| DEDUCTIBLE | $  refer to CG 03 00 01/96 |
|---|---|

| Classification | Class Code | Premium Base | Prem/Ops & Prod/Compl. Ops Rate | Prem/Ops & Prod/Compl. Ops Premium |
|---|---|---|---|---|
| Carpentry - Residential Stru☐ | 91345 | 50000 (p) | 141.7415 | $7,087 |
| Carpentry Residential | 91340 | 35000 (p) | 113.3932 | $3,969 |
| Subcontracting Costs | 91585 | 157891 (c) | 16.2000 | $2,558 |
| | | | | |
| | | | | |
| | | | Sub Total Premium | $    $13,614 |

| SPECIAL PROVISIONS | | Premium |
|---|---|---|
| ☐ Sunset Provision | $ | |
| ☐ Designated Projects General Aggregate | $ | |
| ☑ Limited Job Site Pollution Coverage | $ | $200 |
| ☐ Employee Benefits Liability (Claims Made) | $ | |
| | **TOTAL POLICY PREMIUM** $ | $13,814 |

**Forms Applicable to this Coverage Part:**

| CGL 0001D 00 QA 06/2005 | | | Page 1 of 1 |
|---|---|---|---|

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number:  **01**

| POLICY NUMBER: | POLICY CHANGES EFF: | COMPANY: |
|---|---|---|
| **BTC8020945-05** | **12/22/05** | **Quanta Specialty Lines Insurance Co.** |

NAMED INSURED:

**John B. Wong  DBA: Boxer Group**

COVERAGE PARTS AFFECTED:

**General Liability  Inland Marine**

CHANGES

**This policy is hereby cancelled effective 12/22/2005 due to non-payment on prior policy GAN12780**

**New Annual Premium:  $14,313**

**Additional Premium:  $**

**Return Premium:  $11,565**

*Lisa Erickson*
_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 12 01 11 85                                                                      Page 1 of 1

# LISTING OF FORMS AND ENDORSEMENTS FORMING
# A PART OF THIS POLICY

**POLICY NUMBER:** BTC8020945-05

## NUMBER

### COMMON FORMS:

| NUMBER | TITLE |
|---|---|
| COM 0001D 00 Q2 06-2005 | Common Policy Declarations |
| QSLIC Signature | Quanta Specialty Lines Ins. Comp. Signature page |
| CGL FORM 00 QA 06-2005 | Listing of Forms and Endorsements Forming a Part of This Policy |
| IL 00 17 11 98 | Common Policy Conditions |
| IL 09 85 01 03 | Disclosure Pursuant to Terrorism Risk Insurance Act of 2002 |

## GENERAL LIABILITY
## FORMS:

| NUMBER | TITLE |
|---|---|
| CGL 0001D 00 QA 06-2005 | Commercial General Liability Coverage Part Declarations |
| CG 03 00 01 96 | Deductible Liability Insurance |
| CG 21 54 01 96 | Exclusion - Designated Operations Covered by a Consolidated (Wrap-up) Insurance Program |
| CG 22 34 07 98 | Exclusion - Construction Management Errors and Omissions |
| CG 22 43 07 98 | Exclusion - Engineers, Architects or Surveyors Professional Liability |
| CGB 0001 00 QA 06-2005 | Service of Suit |
| CGB 0004 00 QA 06-2005 | Course of Roofing Operations Exclusion |
| IL 00 21 05 04 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| CG 00 01 12 04 | Commercial General Liability Coverage Form |
| CG 21 47 07 98 | Employment - Related Practices Exclusion |
| CG 21 67 12 04 | Fungi or Bacteria Exclusion |
| CG 21 86 12 04 | Exclusion - Exterior Insulation and Finish Systems |
| CGB 0002 00 QA 06-2005 | Changes in Commercial General Liability |
| CGB 0003 00 QA 06-2005 | Subsidence Exclusion |
| CGB 0005 00 QA 06-2005 | Independent Contractors |
| CGB 0006 00 QA 06-2005 | Exclusion - Condominiums, Townhouses, Apartments and Multiple House Developments |
| CGB 0007 00 QA 06-2005 | Amendment - Employer's Liability Exclusion |
| CGB 0008 00 QA 06-2005 | Exclusion - Claims, Damages and Injuries First Occurring Prior to Policy Period |
| CGB 0009 00 QA 06-2005 | Amendment to Other Insurance Condition |
| CG 22 94 10 01 | Exclusion - Damage to work Performed by Subcontractors on your behalf |
| CGB 0011 00 QA 06-2005 | Exclusion - Prior Completed or Abandoned Work |

CG 21 34 01 87 (A)               Exclusion - Designated Work
CG 20 10 07 04                   Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization
CG 21 75 12 02                   Exclusion of Certified Acts of Terrorism and Other Acts of Terrorism
CGB 0012 00 QA 06-2005           Limited Pollution Coverage - "Work Sites"

**PROPERTY FORMS:**

**INLAND MARINE FORMS:**

CIM 0400D 00 QA 06-2005          Commercial Inland Marine Coverage Part - Declarations
CM 00 01 09 04                   Commerical Inland Marine Conditions
IL 01 03 07 02                   California Changes - Actual Cash Value
IL 01 04 02 04                   California Changes
IL 09 35 07 02                   Exclusion of Certain Computer related losses
IH 00 79 12 00                   Miscellaneous Articles Coverage Form
CIM 0401 00 QA 06-2005           Valuation
IH 99 17 04 05                   Earthquake Exclusion
IH 99 18 04 05                   Water Exclusion
IH 00 68 12 03                   Contractors Equipment Coverage Form
IL 09 56 11 02                   Exclusion of Certified Acts and Other Acts of Terrorism; Coverage for Certain Fire Losses

| CGL FORM 00 QA 06/2005 | | | *Page 2 of 2* |
| --- | --- | --- | --- |

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

POLICY NUMBER: BTC8020945-05

**COMMERCIAL GENERAL LIABILITY**
CG 03 00 01 96

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM or | PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ 1,000 | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A $2,500 Per Claim Bodily Injury and/or Property Damage Liability Combined deductible applies to all losses caused by paint overspray.

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

  1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

    a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

  b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

  c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

    (1) "Bodily injury";

    (2) "Property damage"; or

    (3) "Bodily injury" and "property damage" combined

  as the result of any one "occurrence".

  If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

  With respect to "property damage", person includes an organization.

       Copyright, Insurance Services Office, Inc., 1994

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

       Copyright, Insurance Services Office, Inc., 1994       CG 03 00 01 96

POLICY NUMBER: BTC8020945-05

**COMMERCIAL GENERAL LIABILITY**
CG 21 54 01 96

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of Operation(s):**

**1. ALL OPERATIONS AT LOCATIONS AT WHICH THE INSURED WAS AT ANY TIME COVERED UNDER A WRAP-UP PROGRAM; AND**

**2. OPERATIONS AT ANY LOCATION FOR OR RELATED TO THE INSURED'S WORK UNDER A WRAP-UP PROGRAM.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

COMMERCIAL GENERAL LIABILITY
CG 22 34 07 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

COMMERCIAL GENERAL LIABILITY
CG 22 43 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of Section I – **Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

## SERVICE OF SUIT

It is agreed that service of process in suit may be made upon

> QUANTA, U.S. HOLDINGS, INC.
> Attention: Douglas W. Oliver
> 10 Rockefeller Plaza; 3rd Floor
> New York, NY 10020

And that in any suite instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to who the said officer is authorized to mail such process or a true copy thereof.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## COURSE OF ROOFING OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to, and the Company shall have no duty to defend:

1.  "property damage" to any building or structure or to any property within such building or structure resulting from, caused by, or arising out of water (water includes rain, hail, sleet, or snow).

2.  consequential damages, including loss of use, resulting from such "property damage" described above.

This exclusion does not apply to the "products-completed operations hazard".

All other terms and conditions of this policy remain unchanged.

POLICY NUMBER: BTC8020945-05                                              IL 09 85 01 03

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN
RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSUR-
ANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR
CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK
# INSURANCE ACT OF 2002

**SCHEDULE\***

| |
|---|
| **Terrorism Premium (Certified Acts)**<br>$    100.00<br><br><br>Additional Information, if any, concerning the terrorism premium: |

| |
|---|
| \*    Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk In-
surance Act of 2002, we are required to provide
you with a notice disclosing the portion of your
premium, if any, attributable to coverage for terror-
ist acts certified under that Act. The portion of your
premium attributable to such coverage is shown in
the *Schedule* of this endorsement or in the policy
Declarations.

**B. Disclosure Of Federal Participation In Payment
Of Terrorism Losses**

The United States Government, Department of the
Treasury, will pay a share of terrorism losses in-
sured under the federal program. The federal
share equals 90% of that portion of the amount of
such insured losses that exceeds the applicable
insurer retention.

IL 09 85 01 03                    © ISO Properties, Inc., 2003                    Page 1 of 1

INTERLINE
IL 00 21 05 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001
IL 00 21 05 04

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

  (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

      (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (i) Any insured; or

      (ii) Any person or organization for whom you may be legally responsible; or

    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

      (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

      (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

    (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

  (a) Less than 26 feet long; and

  (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

  (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

  (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003

CG 00 01 12 04

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   (1) "Bodily injury" or "personal and advertising injury":

      (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

      (a) Owned, occupied or used by,

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

#### a. Primary Insurance

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

#### b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

   (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

   (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

#### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

    (1) Goods or products made or sold by you in the territory described in **a.** above;

    (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

    (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   (a) When all of the work called for in your contract has been completed.

   (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

   **(1)** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

   **(1)** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

   **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

   **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

   "Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

   **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

   **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

   **3.** A reinforced or unreinforced base coat;

   **4.** A finish coat providing surface texture to which color may be added; and

   **5.** Any flashing, caulking or sealant used with the system for any purpose.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CHANGES IN COMMERCIAL GENERAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  **SECTION I – COVERAGES, COVERAGE A.
BODILY INJURY AND PROPERTY DAMAGE
LIABILITY** is amended as follows:

1.  Paragraphs 2.a and 2.f are deleted in their entirety
and replaced by the following:

   a.  Expected or Intended Injury

   "Bodily injury" or "property damage"
   expected or intended from the standpoint of
   the insured.  This exclusion does not apply to
   bodily injury resulting from the use of
   reasonable force to protect persons or
   property.

   Any claims, accusations or charges of
   negligent hiring, placement, training or
   supervision arising from actual or alleged
   assault or battery are not covered and we
   shall have no duty to defend the insured from
   any "suit" seeking damages from any such
   claim, accusation or charge.

   f.  Pollution

   (1)  "Bodily injury" or "property damage"
   which would not have occurred in
   whole or part but for the actual,
   alleged or threatened discharge,
   dispersal, seepage, migration, release
   or escape of pollutants at any time.

   This exclusion does not apply to
   "bodily injury" of "property damage"
   arising out of heat, smoke, or fumes
   from a hostile fire unless that hostile
   fire occurred or originated:

   (a)  At any premises, site or location
   which is or was at any time used
   by or for any insured or others
   for the handling, storage,
   disposal, processing or treatment

   of waste; or

   (b)  At any premises, site or location
   on which any insured or any contractors
   or subcontractors working directly or
   indirectly on any insured's behalf are
   performing operations to test for, monitor,
   clean up, remove, contain, treat, detoxify,
   neutralize or in any way respond to, or
   assess the effects of, pollutants.

   As used in this exclusion, a hostile fire means
   one which becomes uncontrollable or breaks
   out from where it was intended to be.

   (2)  Any loss, cost or expense arising out of any:

   (a)  Request, demand or order that any insured
   or others test for, monitor, clean up, remove,
   contain, treat, detoxify or neutralize, or in
   any way respond to, or assess the effects of
   pollutants; or

   (b)  Claim or suit by or on behalf of a
   governmental authority for damages
   because of testing for, monitoring, cleaning
   up, removing, containing, treating, detoxifying
   or neutralizing, or in any way responding to,
   or assessing the effects of pollutants.

   Pollutants means any solid, liquid, gaseous, or thermal
   irritant or contaminant including smoke, vapor, soot,
   fumes, acid, alkalis, chemicals and waste.  Waste
   includes material to be recycled, reconditioned, or
   reclaimed.

B.  **SECTION I – COVERAGES, COVERAGE B
PERSONAL AND ADVERTISING INJURY
LIABILITY** is amended to add the following to
paragraph 2. Exclusions

   p.  To an "employee" of the insured, arising out of
   and in the course of employment by the insured.

C. SECTION III – LIMITS OF INSURANCE
is amended to add the following to paragraph 5:

The Each Occurrence Limit is the most we will pay
regardless of the number of policy(ies) issued to an
insured by us which may apply to the same
"occurrence".

D. ADDITIONAL EXCLUSIONS APPLICABLE
TO COVERAGES A AND B.

This insurance does not apply to:

1. Punitive or Exemplary Damage

A claim of, or indemnification for, punitive or
exemplary damages which are imposed by a court
of law to punish a wrongdoer and/or to deter others
from similar conduct.

If a "suit" is brought against the insured for
damages covered by this policy, seeking both
compensatory and punitive or exemplary damages,
we will afford a defense to such action. We will
not have an obligation to pay for any costs,
interests or damages attributable to punitive or
exemplary damages. This exclusion does not apply
in any state where such endorsement is expressly
prohibited by state law or insurance department
regulations.

2. Asbestos

"Bodily injury" or "property damage" or "personal
and advertising injury" arising out of:

(a) The use of asbestos in constructing or
manufacturing any good, product or
structure; or

(b) The removal of asbestos from any good,
product or structure; or

(c) The manufacture, transportation, storage,
service, installation, use, sales, mining,
distribution or disposal of asbestos or
goods or products containing asbestos; or

(d) Inhaling, ingesting or prolonged physical
exposure to asbestos or goods or products
containing asbestos; or

(e) Any loss, cost or expense related to any of
the above.

3. Abuse or Molestation

"Bodily injury" or "property damage", or
"personal and advertising injury" arising
out of:

a) The actual, alleged, or threatened abuse or
molestation by anyone of any person while
in the care, custody or control of any insured
or

b) The negligent employment, investigation,
supervision, reporting to the proper
authorities, or failure to so report or
retention of a person for who any insured is
or ever was legally responsible and whose
conduct would be excluded by paragraph a)
above.

Abuse, as used in this exclusion, includes but
is not limited to the negligent or intentional
infliction of physical, emotional or
psychological injury or harm on any person
while in the care, custody or control of any
insured.

4. Communicable Disease/Sexual Action

"Bodily injury", "property damage", or
"personal and advertising injury" arising out of
the:

a) Transmission, actual or alleged, of a
communicable disease by any insured,
including , but not limited to, Acquired
Immune Deficiency Syndrome  (AIDS);

b) Failure to perform services which were
either intended to or assumed to prevent
communicable diseases or their transmission
to others; or

c) Sexual action, including but not limited to
any verbal or nonverbal communication,
behavior or conduct with sexual
connotations or purposes, whether for
sexual gratification, discrimination,
intimidation, coercion or other purpose,
regardless of whether such action is alleged
to be intentional or negligent.

5.   Professional Services

"Bodily injury", "property damage", or
"personal and advertising injury" arising
out of the rendering or failure to render
any professional service.

6.   Athletic Participants

"Bodily injury", "property damage", or
"personal and advertising injury" to any
person while practicing for or participating
in any contest or exhibition of an athletic
or sports nature.

7.   Lead

"Bodily injury", "property damage", or
"personal and advertising injury" arising
out of exposure to, inhalation of, or ingestion
of lead or any substance or matter containing
lead or the residue of lead.

8.   Cross Suits

The liability of any Named Insured for any
"bodily injury", "property damage", or
"personal and advertising injury" which is
sustained by or occurs to any Named Insured.

E    **SECTION V – DEFINITIONS** is amended as follows:

1.   Paragraph 5. "Employee" is amended as follows:

"Employee" includes a "leased worker" and a
"temporary worker".

2.   Paragraph 9. "Insured contract" is amended to
Add the following:

However, an "insured contract" does not include
that part of any contract or agreement that
indemnifies any person or organization for
"bodily injury" or "property damage" arising
from an "occurrence" caused by the sole
negligence of that person or organization.

3.   Paragraph 19. "Temporary worker" is amended
as follows:

"Temporary worker" means a person who is
furnished to you to substitute for a permanent
"employee" on leave or to meet seasonal or
short-term work load conditions.  "Temporary
worker" includes casual labor.

All other terms and conditions of this policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABIITY COVERAGE PART

This insurance does not apply to and the Company shall have no duty to defend any claim or "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" arising from or related to "subsidence".

"Subsidence" includes, but is not limited to, settling, expansion, sinking, slipping, falling away, caving in, shifting, eroding, rising, tilting, mud flow, or any other movement of land or earth including earthquake and landslide.

All other terms and conditions of this policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## INDEPENDENT CONTRACTORS

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The insured hereby represents and warrants that:

1.  Commercial General Liability insurance for "bodily injury" and "property damage" will be required for all contractors and sub-contractors performing work or operations on behalf of any insured; and the insured shall obtain certificates of insurance from all contractors and sub-contractors performing work or operations on behalf of any insured.  Such insurance will be in effect during the duration of the time work is being performed on behalf of any insured; and

2.  The insured will be named as an "additional insured" on the required coverages described in Item 1. above; and

3.  The minimum limits and coverages thus required of all contractors and sub-contractors performing work or operations on behalf of any insured shall be:

    REQUIRED LIMIT                          COMMERCIAL GENERAL LIABILITY FORM

    $500,000                                General Aggregate

    $500,000                                Products/Completed Operations Aggregate

    $500,000                                Each Occurrence;

4.  Any coverage that might otherwise exist under this policy for claims against any insured based on work done for, or on behalf of, any insured by a contractor or sub-contractor is expressly excess, and will not contribute with, the insurance required under this endorsement.  No duty to defend or indemnify any insured under this policy for any claims that are or should be covered under the policies required of contractors and sub-contractors under this endorsement will exist absent exhaustion of all such contractors' and sub-contractors' policies.

The insured understands that this insurance policy has been issued upon these representations and warranties.

All other terms and conditions of this policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## EXCLUSION – CONDOMINIUMS, TOWNHOUSES, APARTMENTS, AND MULTIPLE HOUSE DEVELOPMENTS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to and the Company shall have no duty to defend any claim of "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" arising out of any work involving, related to, or performed about the premises of a:

1.  Condominium;

2.  Townhouse;

3.  Apartment; or

4.  Any project or premise on which more than 10 houses or dwelling units have been built or are in any stage of development, planning, or construction.

This exclusion does not apply to:

1.  Non-structural remodeling of a single unit on premises described in paragraph 1., 2., and 3. above; or

2.  Structural or non-structural remodeling or additions to a single house in a development described in paragraph 4. above.

All other terms and conditions of this policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## ADMENDMENT – EMPLOYER'S LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Exclusion e. Employer's Liability of item 2. Exclusions, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, SECTION I – COVERAGES is replaced by the following:

e.  Employers Liability

"Bodily Injury" to:

(1)  An "employee" or "temporary worker" of any insured arising out of and in the course of:

(a)  Employment by any insured; or

(b)  Performing duties related to the conduct of an insured's business; or

(2)  The spouse, child, parent, brother or sister of that "employee" or "temporary worker" as a consequence of paragraph (1) above.

This exclusion applies:

(1)  Whether an insured may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

All other terms and conditions of this policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EXCLUSION – CLAIMS, DAMAGES AND INJURIES FIRST OCCURRING PRIOR TO POLICY PERIOD

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A.   This insurance, including our duty to defend a "suit" shall not apply to "bodily injury", "property damage", or "personal and advertising injury: that:

    1.   Was discovered before the inception date of this policy; or

    2.   The insured knew or should have known occurred before the inception date of this policy stated in the Declarations.

B.   This insurance, including our duty to defend a "suit", shall not apply to any claim or "suit" for "bodily injury:, "property damage", or "personal and advertising injury" that was first filed or asserted against any "insured" before the inception date of this policy as stated in the Declarations.

C.   For purposes of this exclusion:

    1.   Damage or injury is discovered when damage or injury is first observed by anyone, whether or not an "insured".

    2.   Discovery of some damage or injury caused by an "occurrence" or by a "personal and advertising injury" offense constitutes discovery of all damage or injury caused by the same "occurrence" or offense.

All other terms and conditions of this policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Condition 4. Other insurance of SECTION IV–COMMERCIAL GENERAL LIABILITY CONDITIONS is deleted in its entirety and is replaced by the following:

4.  Other Insurance

   a.  Primary Insurance

      This insurance is primary except when b. below applies.

   b.  Excess Insurance

      This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

      (1)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

      (2)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

      (3)  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

      (4)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to exclusion g. of Section I-Coverage A-Bodily

Injury and Property Damage Liability; or

      (5)  That is valid and collectible insurance available to you under any other policy.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's right against all those other insurers.

When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

      (1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

      (2)  The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

All other terms and conditions of this policy remain unchanged.

COMMERCIAL GENERAL LIABILITY
CG 22 94 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion I. of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**I. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – PRIOR COMPLETED OR ABANDONED WORK

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY PART

### SCHEDULE

Date: 10/13/2005

(If no entry appears above, the Date will be the inception date of the policy to which this endorsement is made part of)

A.  This insurance does not apply and the Company shall have no duty to defend any claim or "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" arising out of "your work":

1.  completed prior to the date shown in the schedule of this endorsement; or

2.  abandoned by the insured prior to the date shown in the schedule of this endorsement.

B.  Paragraph 16.a.(2).(c) of SECTION V – DEFINITIONS is deleted in its entirety and replaced by the following:

(c)  When that part of the work done at a job site has been put to its intended use by any person or organization.

All other terms and conditions of this policy remain unchanged.

POLICY NUMBER: BTC8020945-05                                 **COMMERCIAL GENERAL LIABILITY**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**

1. Construction management for a fee.

2. Construction of new homes as a general contractor or developer.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

POLICY NUMBER: BTC8020945-05

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| **Blanket coverage** for any person or organization that the named insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy **and is approved by the Company in writing within 30 days** of the inception of the contract or agreement, or the inception of this policy, whichever is later. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 07 04                     © ISO Properties, Inc., 2004                     Page 1 of 1     ☐

COMMERCIAL GENERAL LIABILITY
CG 21 75 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

  **a.** Physical injury that involves a substantial risk of death; or

  **b.** Protracted and obvious physical disfigurement; or

  **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

  **a.** The act resulted in aggregate losses in excess of $5 million; and

b. The act is a violent act or an act that is dangerous to human life, property or infra-structure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

© ISO Properties, Inc., 2002                       □

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**LIMITED POLLUTION COVERAGE – "WORK SITES"**

It is agreed that this endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABIILTY COVERAGE PART**

| Schedule | |
|---|---|
| Each Pollution Incident Limit | $250,000.00 |
| Pollution Liability Aggregate Limit | $250,000.00 |
| Deductible | $   5,000.00 **Each Pollution Incident** |

A.  The following is added to coverages (SECTION I)

   **COVERAGE D. ADDITIONAL COVERAGES – LIMITED POLLUTION COVERAGE.**

   1.  Insuring Agreement

      a.  We will pay for those sums that the insured becomes legally obligated to pay:

         (1)  As damages because of:

            (a)  "Bodily injury";
            (b)  "Property damage"; or

         (2)  As "clean-up costs" because of "environmental damage",

      to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "pollution incident" and settle any claim or "suit" that may result.  But:

         (1)  The amount we will pay for damages, "clean-up costs" and defense costs is limited as described in SECTION III – LIMITS OF INSURANCE of this endorsement; and

         (2)  Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements, "clean-up costs" or defense costs.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

      b.  This insurance applies to "bodily injury", "property damage" and "environmental damage" only if:

         (1)  The "bodily injury", "property damage", or "environmental damage" is caused by a "pollution incident";

            (a)  At a "work-site" in the "coverage territory"; and

            (b)  That begins and ends within 72 hours; and

            (c)  That is reported to Us within 30 days of the sooner of (a) the date "pollution incident" occurs or (b) when the "pollution incident" becomes known to You or should have become known by You.

    (2) The "bodily injury", "property damage", or "environmental damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury".

2. Exclusions

The insurance provided by this endorsement does not apply to:

a. "Bodily injury", "property damage", or "environmental damages" expected or intended from the standpoint of the insured.

b. "Bodily injury", "property damage", or "environmental damages" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

c. Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

d. "Bodily injury" to:

    (1) An employee of the insured arising out of and in the course of employment by the insured; or

    (2) Performing duties related to the conduct of the insured's business; or

    (3) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

e. "Property damage", or "environmental damage" to:

    (1) A "waste facility";

    (2) Property you own, rent, or occupy now or at any other time;

    (3) Premise you sell, give away or abandon, if the "property damage" arises out of any part of these premises;

    (4) Property loaned to you; or

    (5) Personal property in the care, custody or control of an insured.

f. "Clean-up costs" or any other expense incurred by you or others to test for, monitor clean-up, remove, contain, treat, detoxify or neutralize "pollutants" on or at:

    (1) A "waste facility"; or

    (2) Premises you own, rent or occupy;

Or to any recovery claimed for such cost or expense.

g.  "Bodily injury", "Property damage", or "environmental damages" included within the "products-completed operations hazard".

h.  "Bodily injury", "property damage", or "environmental damages" arising out of the ownership or operation of any offshore facility as defined in the Outer Continental Shelf Lands Act Amendment of 1978 of the Clean Water Act of 1977 as amended 1978 or any deepwater port as defined in the Deepwater Port Act of 1974 as amended or as may be amended.

i.  "Bodily injury", "property damage", or "environmental damages" arising out of:

    (1)  A "pollution incident" from a "work site" or any part of a "work site" that is, or was at anytime, used by you for the storage, disposal, processing or treatment of waste materials; or

    (2)  A "pollution incident" at a "work site" or any part of a "work site" if your operations are to test for, monitor, clean up, remove, treat, detoxify or neutralize, or in any way respond to, or assess, the effects of pollutants.

j.  "Bodily injury", "property damage", or "environmental damages" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto", rolling stock or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

    This exclusion does not apply to "bodily injury", "property damage", or "environmental damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "Mobile Equipment" (SECTION V.8).

k.  "Bodily injury", "property damage", or "environmental damages" arising out of the emission, discharge, release or escape of drilling fluid, oil, gas or other fluids from any oil, gas, mineral, water or geothermal well.

l.  "Bodily injury", "property damage", or "environmental damages" arising out of "pollution incident" which results from or is directly or indirectly attributable to failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body, provided that failure to comply is a willful or deliberate act or omission of:

    (1)  An insured; or

    (2)  You or any of your members, partners or executive officers.

m.  "Bodily injury", "property damage", or "environmental damages" arising out of acid rain.

n.  "Bodily injury", "property damage", or "environmental damages" arising out of:

    (1)  The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

    (2)  The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

o.  Any loss, cost or expense arising out of any request, demand or order by a governmental authority that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the affects of "pollutants" at any site which is included or proposed for inclusion on a governmental authority's clean-up priority list.

p.  "Bodily injury", "property damage", or "environmental damages" arising out of:

(1) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of these operations; or

(2) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

q.   "Bodily Injury", "property damage" or "environmental damage", however caused, arising, directly or indirectly out:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

r.   Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B.   **SUPPLEMENTARY PAYMENTS COVERAGE A. AND B.** is amended to:

**SUPPLEMENTARY PAYMENTS COVERAGE A, B, AND D.**

C.   **SECTION III – LIMITS OF INSURANCE** is amended as follows:

Paragraph 1. is replaced by the following:

1.   The limits of insurance shown in the Declarations and the Limited Pollution Coverage – "Work Sites" endorsement and the rules below fix the most we will pay regardless of the number of:

a.   Insureds;

b.   Claims made or "suits" brought; or

c.   Persons or organizations making claims or bringing "suits".

Paragraph 2. is replaced by the following:

2.   The General Aggregate Limit is the most we will pay for the sum of:

a.   Medical expenses under Coverage C;

b.   Damages under Coverage A, except damages because of "bodily injury" or "property damages" included in the "products-completed operations hazard";

c.   Damages under Coverages B; and

d.   Damages, "clean-up costs" and defense costs under Coverage D.

The following is added:

8.  Subject to 2. above (the General Aggregate Limit) Pollution Liability Aggregate Limit is the most we will pay for the sum of:

    a. All damages because of all "bodily injury" and "property damage"; and

    b. All "clean-up costs" incurred because of all "environmental damage", and

    c. All defense costs incurred

that result from all "pollution incidents".

9.  Subject to 2. above (the General Aggregate Limit and 8. above (the Pollution Liability Aggregate Limit) the Each Pollution Incident Limit is the most we will pay for;

    a. All damages because of all "bodily injury" and "property damage"; and

    b. All "clean-up costs" incurred because of all "environmental damage", and

    c. All defense costs incurred

Arising from any on "pollution incident".

3.  Deductible

    a.  Our obligation under this endorsement to pay damages for "bodily injury", "property damage" or "environmental damages" on your behalf applies only to the amount of damages in excess of any deductible amount stated in the schedule of this endorsement as applicable to Each Pollution Incident. The Each Pollution Incident Limit and the Pollution Liability Aggregate Limit will be reduced by the application of such deductible amount.

    b.  The terms of this insurance, including those with respect to:

        (1)  Our right and duty to defend any "suits" seeking those damages and

        (2)  Your duties in the event of an "occurrence", claim, or suit

    apply irrespective of the application of the deductible amount.

    c.  We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

4.  **SECTION IV, COMMERCIAL GENERAL LIABILITY CONDITIONS,** Paragraph 4., Other Insurance is amended as follows:

All references to Coverages A and B are amended to read Coverage A, B and D.

5.  The following definitions are added to SECTION V – DEFINITIONS:

22.  "Clean-up costs:" means expenses for the removal or neutralization of contaminants, irritants or "pollutants".

23.  "Environmental damage" means the injurious presence in or upon land, the atmosphere, or any water course or body of water of solid, liquid, gaseous or thermal contaminants, irritants or "pollutants".

24.  "Pollution incident" means the actual or alleged emission, discharge, release, or escape of "pollutants" from a "work site" provided that such emission, discharge, release, or escape results

in "environmental damage" the entirety of any such emission, discharge, release, or escape will be deemed to be one "pollution incident".

25. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

26. "Waste facility" means any site to which waste from the operations of a "work site" is consigned for delivery or delivered for storage, disposal, processing or treatment.

27. "Work site" means any site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insureds behalf are performing operations. "Work site" does not include any premises, site or location which is or was at any time owned or occupied by or rented or loaned to any insured.

All other terms and conditions of this policy remain unchanged.

# COMMERCIAL INLAND MARINE COVERAGE PART DECLARATIONS

Policy No.: BTC8020945-05                    Effective Date: 10/13/2005

Named Insured: John B. Wong DBA: Boxer Group          Renewal of:

### LIMITS OF INSURANCE

| Coverage Part (applicable only if selected below) | | Limits of Insurance |
|---|---|---|
| ☑ Miscellaneous Articles Coverage | | |
| Schedule of Covered Property: | | |
| Miscellaneous office contents, equipment, furniture and fixtures usual and incidental to the insured's business | $ | 5,000 |
| All Covered Property in Any One Occurrence | $ | 5,000 |
| | | |
| ☑ Contractors Equipment Coverage | | |
| Miscellaneous unscheduled equipment – any one item | $ | 1,500 |
| All miscellaneous unscheduled equipment – any one occurrence | $ | 10,000 |
| All Scheduled equipment (see CIM 0200D SUPP 00 Q2) | $ | |
| Rented/Leased Equipment (from others) | $ | |
| All Covered Property in Any One Occurrence | $ | |
| | | |
| ☐ Installation Coverage | | |
| Covered Property: | | |
| While at any one job site | $ | |
| At any location other than a job site | $ | 10,000 |
| In transit | $ | 10,000 |
| Optional Coverages: | | |
| Earthquake | $ NOT COVERED | |
| Soft Costs | $ NOT COVERED | |
| Water | $ NOT COVERED | |
| Fungi, Wet Rot, Dry Rot and Bacteria | $ NOT COVERED | |
| All Covered Property in Any One Occurrence | $ | 0 |
| | | |
| ☐ Computer Systems Coverage | | |
| All Covered Property in Any One Occurrence | $ | |
| Property at any one unnamed premises except an additionally acquired premises | $ | 5,000 |
| Property in transit or otherwise away from the described premises except an additionally acquired premises | $ | 5,000 |
| Optional Coverages: | | |
| Extra Expense | $ | |
| Virus, Harmful Code or Similar Instruction – Property Damage | $ | 5,000 |
| Virus, Harmful Code or Similar Instruction – Business Income | $ | 5,000 |

| Property at Described Premises | Computer Equipment | Media and Data |
|---|---|---|
| Various | $ | $ |
| | $ | $ |

---

## DEDUCTIBLES (further subject to Special Provisions noted below)

| Coverage (if applicable) | Theft | Deductibles<br>All Other Causes of Loss |
|---|---|---|
| Miscellaneous Articles | $2,500 | $1,000 |
| Contractors Equipment | $2,500 | 1% of the amount of insurance on the item(s)<br>lost or damaged but not less than $500 |
| Installation | | |
|     Earthquake | | $ |
|     Soft Costs | | $ |
|     Water Damage | | $ |
|     All Other Losses | $2,500 | $1,000 |
| Computer Systems | $1,500 | $ 500 |

---

## COINSURANCE

| Coverage (if applicable) | Coinsurance |
|---|---|
| Miscellaneous Articles | 90% |
| Contractors Equipment | 80% |
| Installation | 90% |
| Computer Systems | 90% |

---

## RATES & PREMIUM

| | Rate | Premium | |
|---|---|---|---|
| Miscellaneous Articles Coverage | various | $ | included |
| Contractors Equipment Coverage | various | $ | included |
| Installation Coverage | | $ | |
| Computer Systems Coverage | | $ | |
| | Total Premium | $ | 500 |

---

## SPECIAL PROVISIONS

If a single occurrence causes loss or damage to Covered Property under more than one Coverage Part shown above, each applicable Coverage Part deductible shown above shall apply separately to the loss or damage under each Coverage Part.  Within any single Coverage Part, if two or more deductible amounts apply for one occurrence, the total to be deducted shall be the largest applicable deductible.

---

Forms Applicable to This Coverage Part: SEE CGL FORM 00 QA 06/2005

THESE DECLARATIONS, WHEN COMBINED WITH THE COMMON POLICY DECLARATIONS, THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

---

COMMERCIAL INLAND MARINE
CM 00 01 09 04

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties In The Event Of Loss

You must see that the following are done in the event of loss or damage to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the loss or damage. Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the loss or damage occurred.

4. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

5. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### E. Loss Payment

1. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

2. We will not pay you more than your financial interest in the Covered Property.

3. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

4. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**5.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if you have complied with all the terms of this Coverage Part and:

  **a.** We have reached agreement with you on the amount of the loss; or

  **b.** An appraisal award has been made.

**6.** We will not be liable for any part of a loss that has been paid or made good by others.

### F. Other Insurance

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

### G. Pair, Sets Or Parts

**1. Pair Or Set**

In case of loss or damage to any part of a pair or set we may:

  **a.** Repair or replace any part to restore the pair or set to its value before the loss or damage; or

  **b.** Pay the difference between the value of the pair or set before and after the loss or damage.

**2. Parts**

In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

### H. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

### I. Reinstatement Of Limit After Loss

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss or damage of a scheduled item, in which event we will refund the unearned premium on that item.

### J. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property.

**2.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

  **a.** Someone insured by this insurance; or

  **b.** A business firm:

    **(1)** Owned or controlled by you; or

    **(2)** That owns or controls you.

This will not restrict your insurance.

## GENERAL CONDITIONS

### A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

### B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all the terms of this Coverage Part; and

**2.** The action is brought within 2 years after you first have knowledge of the direct loss or damage.

**D. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. Policy Period, Coverage Territory**

We cover loss or damage commencing:

1. During the policy period shown in the Declarations; and

2. Within the coverage territory.

**F. Valuation**

The value of property will be the least of the following amounts:

1. The actual cash value of that property;

2. The cost of reasonably restoring that property to its condition immediately before loss or damage; or

3. The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

IL 01 03 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

IL 01 04 02 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL
COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following with respect to loss ("loss") or damage caused by fire:

We do not provide coverage to the insured ("insured") who, whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** That insured's ("insured's") interest in the Covered Property; or

**4.** A claim under this Coverage Part or Coverage Form.

**C.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following with respect to loss ("loss") or damage caused by a Covered Cause of Loss other than fire:

This Coverage Part is void if any insured ("insured"), whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** An Insured's ("insured's") interest in the Covered Property; or

**4.** A claim under this Coverage Part or Coverage Form.

**D.** Except as provided in **E.,** the **Appraisal** Condition is replaced by the following:

If we and you disagree on the value of the property or the amount of loss ("loss"), either may make written request for an appraisal of the loss ("loss"). If the request is accepted, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss ("loss"). If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**E.** The Appraisal Condition in:

**1.** Business Income (And Extra Expense) Coverage Form **CP 00 30;** and

**2.** Business Income (Without Extra Expense) Coverage Form **CP 00 32;**

IL 01 04 02 04                    © ISO Properties, Inc., 2003                    Page 1 of 2

is replaced by the following:

If we and you disagree on the amount of Net In-
come and operating expense or the amount of
loss, either may make written request for an ap-
praisal of the loss. If the request is accepted, each
party will select a competent and impartial ap-
praiser. Each party shall notify the other of the ap-
praiser selected within 20 days of the request. The
two appraisers will select an umpire. If they cannot
agree within 15 days, either may request that se-
lection be made by a judge of a court having juris-
diction. The appraisers will state separately the
amount of Net Income and operating expense or
amount of loss. If they fail to agree, they will sub-
mit their differences to the umpire. A decision
agreed to by any two will be binding. Each party
will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and
umpire equally.

If there is an appraisal, we will still retain our right
to deny the claim.

IL 09 35 07 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

   **1.** The failure, malfunction or inadequacy of:

      **a.** Any of the following, whether belonging to any insured or to others:

         **(1)** Computer hardware, including microprocessors;

         **(2)** Computer application software;

         **(3)** Computer operating systems and related software;

         **(4)** Computer networks;

         **(5)** Microprocessors (computer chips) not part of any computer system; or

         **(6)** Any other computerized or electronic equipment or components; or

      **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

   due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

   **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

   **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

   **2.** Under the Commercial Property Coverage Part:

      **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

      **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

   we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

COMMERCIAL INLAND MARINE
IH 00 79 12 00

# MISCELLANEOUS ARTICLES
# COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

We will pay for loss of or damage to Covered Property from any of the Covered Causes of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Form, means the property described in the Declarations that:

a. You own; or

b. Is in your care, custody or control.

### 2. Property Not Covered

Covered Property does not include:

a. Real Property;

b. Aircraft, Motor Vehicles designed for highway use or Watercraft;

c. Property after it is sold and delivered or otherwise disposed of, including property sold under a deferred payment sales agreement; or

d. Contraband, or property in the course of illegal transportation or trade.

### 3. Covered Causes Of Loss

Covered Causes of Loss means Risks Of Direct Physical Loss Or Damage to Covered Property except those causes of loss listed in the Exclusions.

### 4. Additional Acquired Property

If during the policy period you take possession of additional property of a type already covered by this coverage form, we will cover such property for up to 30 days, but not beyond the end of the policy period. The most we will pay for loss or damage is the lesser of:

a. 25% of the total Limit of Insurance shown in the Declarations for all Individually listed and described items; or

b. $10,000 for any one item.

You will report values of such property to us within 30 days after you take possession and will pay any additional premium due. If you do not report such property, coverage will cease automatically 30 days after the date the property is acquired or at the end of the policy period, whichever occurs first.

The Coinsurance Additional Condition does not apply to this coverage.

This Additional Coverage does not increase the applicable Limit of Insurance shown in the Declarations.

## B. Exclusions

### 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

a. **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

b. **Nuclear Hazard**

(1) Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this Coverage Form.

c. **War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

Exclusions **B.1.a.** through **B.1.c.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Denting, chipping, marring, scratching.

**b.** Delay, loss of use, loss of market or any other consequential loss.

**c.** Dishonest or criminal act committed by:

**(1)** You, any of your partners, employees, directors, trustees, or authorized representatives;

**(2)** A manager or a member if you are a limited liability company;

**(3)** Anyone else with an interest in the property, or their employees or authorized representatives; or

**(4)** Anyone else to whom the property is entrusted for any purpose.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

**d.** Breakdown of refrigeration equipment.

But we will pay for such loss or damage caused directly by fire, lightning, explosion, windstorm, vandalism, aircraft, rioters, strikers, theft or attempted theft, or by "accident" to the vehicle carrying the property if these causes of loss would be covered under this Coverage Form.

**e.** Processing or work upon the property.

But we will pay for direct loss or damage caused by resulting fire or explosion if these causes of loss would be covered under this Coverage Form.

**f.** Theft from any unattended vehicle unless at the time of theft its windows, doors and compartments were closed and locked and there are visible signs that the theft was the result of forced entry. But this exclusion does not apply to property in the custody of a carrier for hire.

This Theft From Any Unattended Vehicle Exclusion applies unless otherwise indicated in the Declarations.

**g.** Unexplained disappearance.

**h.** Shortage found upon taking inventory.

**i.** Artificially generated current creating a short circuit or other electrical disturbance within an article covered under this Coverage Form.

This exclusion applies only to loss or damage to that article in which the disturbance occurs.

**j.** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**k.** Unauthorized instructions to transfer property to any person or to any place.

**l.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Wear and tear, depreciation.

**b.** Any quality in the property that causes it to damage or destroy itself, hidden or latent defect, gradual deterioration.

**c.** Mechanical breakdown.

**d.** Insects, vermin or rodents.

**e.** Corrosion, rust, dampness, extremes of temperature.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

**D. Deductible**

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

**E. Additional Conditions**

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

**1. Coverage Territory**

We cover property wherever located.

**2. Coinsurance**

All items must be covered for their total value as of the time of loss or damage or you will incur a penalty.

The penalty is that we will pay only the proportion of any loss or damage to these items that the Limit of Insurance shown in the Declarations for them bears to their value as of the time of loss or damage. We will use the following steps:

a. Divide the Limit of Insurance of the lost or damaged item of Covered Property by the value of the item at the time of loss or damage;

b. Multiply the total amount of loss or damage, before the application of any deductible, by the figure determined in Step **a.**; and

c. Subtract the deductible from the figure determined in Step **b.**

We will pay the amount determined in Step **c.** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**F. Definitions**

"Accident" means:

1. Upset or overturn of the transporting vehicle; or

2. The violent and accidental contact of the transporting vehicle with another vehicle or object, but not including:

a. The roadbed or curbing;

b. Rails or ties of street, steam or electric railroad; or

c. Any stationary object while backing for loading or unloading purposes.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## VALUATION ENDORSEMENT

In consideration of the premium charged, this endorsement modifies insurance provided under the following:

**MISCELLANEOUS ARTICLES COVERAGE FORM**

Valuation

Section **F. VALUATION** of **GENERAL CONDITIONS** of the **COMMERCIAL INLAND MARINE CONDITIONS** is deleted and replaced with:

**F.  VALUATION**

The value of property will be the lesser or the following amounts:
   a.  The cost of reasonably restoring that property to its condition immediately before the loss; or
   b.  The cost of replacing that property with substantially identical property.
In the event of loss or damage, the value of the property will be determined as of the time of loss or damage.

All other terms and conditions of the Policy remain unchanged.

COMMERCIAL INLAND MARINE
IH 99 17 04 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARTHQUAKE EXCLUSION

This endorsement modifies insurance provided under the following:

> ANNUAL TRANSIT COVERAGE FORM
> COMMERCIAL FINE ARTS COVERAGE FORM
> COMPUTER SYSTEMS COVERAGE FORM
> CONTRACTORS EQUIPMENT COVERAGE FORM
> DIFFERENCE IN CONDITIONS COVERAGE FORM
> MACHINERY AND EQUIPMENT COVERAGE FORM
> MISCELLANEOUS ARTICLES COVERAGE FORM
> MOTOR TRUCK CARGO CARRIERS COVERAGE FORM
> MOTOR TRUCK CARGO OWNERS COVERAGE FORM
> PATTERNS AND DIES COVERAGE FORM
> RADIO AND TELEVISION TOWERS AND EQUIPMENT COVERAGE FORM
> RAILROAD ROLLING STOCK COVERAGE FORM
> SALESPERSONS SAMPLES COVERAGE FORM
> SCIENTIFIC AND MEDICAL DIAGNOSTIC EQUIPMENT COVERAGE FORM
> TANK STORAGE COVERAGE FORM
> TRIP TRANSIT COVERAGE FORM
> WAREHOUSE OPERATORS LEGAL LIABILITY COVERAGE FORM

The following exclusion is added to Section **B.**, Paragraph **1.**:

Earthquake, but we will pay for direct loss or damage caused by resulting fire, explosion or theft if these causes of loss would be covered under this Coverage Form.

This exclusion does not apply to property in transit.

COMMERCIAL INLAND MARINE
IH 99 18 04 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WATER EXCLUSION

This endorsement modifies insurance provided under the following:

    ANNUAL TRANSIT COVERAGE FORM
    COMMERCIAL FINE ARTS COVERAGE FORM
    COMPUTER SYSTEMS COVERAGE FORM
    CONTRACTORS EQUIPMENT COVERAGE FORM
    DIFFERENCE IN CONDITIONS COVERAGE FORM
    MACHINERY AND EQUIPMENT COVERAGE FORM
    MISCELLANEOUS ARTICLES COVERAGE FORM
    MOTOR TRUCK CARGO CARRIERS COVERAGE FORM
    MOTOR TRUCK CARGO OWNERS COVERAGE FORM
    PATTERNS AND DIES COVERAGE FORM
    RADIO AND TELEVISION TOWERS AND EQUIPMENT COVERAGE FORM
    RAILROAD ROLLING STOCK COVERAGE FORM
    SALESPERSONS SAMPLES COVERAGE FORM
    SCIENTIFIC AND MEDICAL DIAGNOSTIC EQUIPMENT COVERAGE FORM
    TANK STORAGE COVERAGE FORM
    TRIP TRANSIT COVERAGE FORM
    WAREHOUSE OPERATORS LEGAL LIABILITY COVERAGE FORM

The following exclusion is added to Section **B.,** Paragraph **1.:**

Water damage caused directly or indirectly by flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not. But we will pay for direct loss or damage caused by resulting fire, explosion or theft if these causes of loss would be covered under this Coverage Form.

This exclusion does not apply to property in transit.

COMMERCIAL INLAND MARINE
IH 00 68 12 03

# CONTRACTORS EQUIPMENT COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Form, means the following property described in the Declarations:

  **a.** Your contractor's equipment; and

  **b.** Similar property of others in your care, custody or control.

### 2. Property Not Covered

Covered Property does not include:

  **a.** Automobiles, motor trucks, trailers or other vehicles licensed for use on public roads;

  **b.** Aircraft or watercraft;

  **c.** Plans, blueprints, designs or specifications;

  **d.** Property while waterborne, except while on ferries operating on the navigable waters of the Continental United States and Canada (other than to or from Alaska);

  **e.** Property while underground or under water;

  **f.** Property that you loan, lease or rent to others;

  **g.** Contraband, or property in the course of illegal transportation or trade; or

  **h.** Tools and clothing belonging to your employees.

### 3. Covered Causes Of Loss

Covered Causes of Loss means Risks Of Direct Physical Loss Or Damage to Covered Property except those causes of loss listed in the Exclusions.

## 4. Additional Coverages

### a. Additionally Acquired Property

If during the policy period you acquire additional property of a type already covered by this Coverage Form, we will cover such equipment for up to 60 days, but not beyond the end of the policy period.

The most we will pay for loss or damage is the lesser of:

  **(1)** 25% of the total Limit of Insurance shown in the Declarations for all scheduled equipment; or

  **(2)** $50,000

You will report values of such property to us within 60 days from the date you take possession and will pay any additional premium due. If you do not report such property, coverage will cease automatically 60 days after the date the property is acquired or at the end of the policy period, whichever occurs first.

The Coinsurance Additional Condition does not apply to this coverage.

This Additional Coverage does not increase the applicable Limit of Insurance shown in the Declarations.

### b. Debris Removal

  **(1)** We will pay your expenses to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

  **(2)** The most we will pay under this Additional Coverage is 25% of:

    **(a)** The amount we pay for the direct physical loss or damage to Covered Property; plus

    **(b)** The deductible in this policy applicable to that loss or damage.

(3) Payment under this Additional Coverage will not increase the applicable Limit of Insurance, but if:

    (a) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

    (b) The debris removal expense exceeds the amount payable under the 25% limitation;

we will pay up to an additional $5,000 in any one occurrence under this Additional Coverage.

(4) This Additional Coverage does not apply to costs to:

    (a) Extract "pollutants" from land or water; or

    (b) Remove, restore or replace polluted land or water.

### c. Preservation Of Property

If it is necessary to move Covered Property to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

This Additional Coverage does not increase the Limit of Insurance.

### d. Pollutant Clean Up And Removal

We will pay your expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

The limit for this Additional Coverage is in addition to the Limit of Insurance.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

### a. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

### b. Nuclear Hazard

(1) Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this Coverage Form.

### c. War And Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

Exclusions **B.1.a.** through **B.1.c.** apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Delay, loss of use, loss of market or any other consequential loss.

b. Dishonest or criminal act committed by:

(1) You, any of your partners, employees, directors, trustees, or authorized representatives;

                 © ISO Properties, Inc., 2003                 IH 00 68 12 03

(2) A manager or a member if you are a limited liability company;

(3) Anyone else with an interest in the property, or their employees or authorized representatives; or

(4) Anyone else to whom the property is entrusted for any purpose.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

c. Work upon the property.

But if work upon the property results in fire or explosion, we will pay for direct loss or damage caused by that fire or explosion if the fire or explosion would be covered under this Coverage Form.

d. Artificially generated current creating a short circuit or other electric disturbance within an article covered under this Coverage Form.

But if artificially generated current, as described above, results in fire or explosion, we will pay for direct loss or damage caused by that fire or explosion if the fire or explosion would be covered under this Coverage Form.

This exclusion only applies to loss or damage to that article in which the disturbance occurs.

e. Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

f. Unauthorized instructions to transfer property to any person or to any place.

g. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. Wear and tear, depreciation.

b. Any quality in the property that causes it to damage or destroy itself, hidden or latent defect, gradual deterioration.

c. Insects, vermin, rodents.

d. Corrosion, rust.

e. Mechanical breakdown or failure of the Covered Property.

## C. Limits Of Insurance

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. Deductible

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

## E. Additional Conditions

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

### 1. Coverage Territory

a. We cover property wherever located within:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

b. We also cover property being shipped by air within and between points in Paragraph a.

### 2. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

We will not pay the full amount of any loss or damage if the value of an item of Covered Property at the time of loss or damage times the Coinsurance percentage is greater than the Limit of Insurance for the item.

Instead, we will determine the most we will pay using the following steps:

a. Multiply the value of the item of Covered Property at the time of loss or damage by the Coinsurance percentage;

b. Divide the Limit of Insurance of the property by the figure determined in Step a.;

c. Multiply the total amount of loss or damage, before the application of any deductible, by the figure determined in Step b.; and

d. Subtract the deductible from the figure determined in Step c.

We will pay the amount determined in Step **d.** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

This provision does not apply to blanket property or rented equipment.

**F. Definitions**

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

IL 09 56 11 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM; COVERAGE FOR CERTAIN FIRE LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The following definitions are added with respect to the provisions of this endorsement:

1. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in aggregate losses in excess of $5 million; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.

**B.** The following exclusion is added:

**EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism" or an "other act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. **But with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:**

1. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

2. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

3. The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "other acts of terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

© ISO Properties, Inc., 2002                **Page 1 of 2**          □

With respect to this Item **B.3.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an "other act of terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an "other act of terrorism", there is no coverage under this Coverage Part or Standard Property Policy.

**C. Exception Covering Certain Fire Losses**

If a "certified act of terrorism" or an "other act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

With respect to fire resulting from any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Standard Property Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© ISO Properties, Inc., 2002                    **IL 09 56 11 02**

Yahoo! Maps - San Francisco, CA 94123-4716                          Page 1 of 2



Yahoo! My Yahoo! Mail   Make Yahoo! your home page

**YAHOO!** LOCAL   Welcome, pbn050647
                Maps   [Sign Out, My Account]



★ **Map for: 2848 Steiner St San Francisco, CA 94**

Driving Directions: To Here - From Here | Printable Version | Email Map | Link to this Map   MY Y!

Zoom In -
1st.3city567state910-
Zoom
Out
small map



See these business locations on this map
GOOD YEAR   AVIS   Fairfield Inn

◉ Zoom in & Re-Center ○ Re-Center only View Map Legend

SPONSORED LINKS

10/13/2005 09:46 16505728893                                    PAGE 01

QSAP
CA 

**Chau & Co., Inc. Insurance Agency**
2555 Flores Street, Ste. 280
San Mateo, Ca. 94403
(tel) 650-572-9838     (fax) 650-572-8893
license no. 0674976

RECEIVED
OCT 1 3 2005
BY:_____

Wednesday, October 12, 2005

Michael Clark
Underwriter
Builders & Tradesmen's Ins Svcs
2999 Douglas Blvd, Ste. 115
Roseville, CA  95661

13 PAGES

fax 916-677-2051 re: submission ID: QGLQ061961     MC

Dear Michael,                    DBA: Boxer Group

Attached are all binding requirements along with net trust check payable to BTIS for
$3030.19.

This application replaces NIC policy no. GAN12780 written through BTIS and cancelled
on 9/19/05. There is no prior insurance policy in effect, and applicant is willing to certify
"no losses".

Please let me know if you need anything else.

## Thanks!

Sincerely,

*Armand P. Chau*

Armand P. Chau LUTCF CIC

email: apchau@aol.com

broker sign prop.

10/13/2005  09:46  16505728893                                      PAGE  02
09/06/2005  10:21  16505728893

Page 1 of 1

## QSAP BINDING REQUIREMENTS

### INFORMATION REQUIRED TO REQUEST BINDING OF COVERAGE:

| CALIFORNIA - ITEMS REQUIRED | Comments |
|---|---|
| INSURANCE PROPOSAL | SIGNED by APPLICANT (all pages must be submitted) |
| SL-2 FORM  (AGENT) DILIGENT SEARCH | CA ONLY |
| D-1 FORM | CA ONLY |
| IF THE APPLICABLE, SUNSET PROVISION | CGB 00010 00 QA 08/2005 SIGNED BY APPLICANT |
| PROOF OF PAYMENT | COPY OF FINANCE AGREEMENT OR AGENCY CHECK |
| HARD COPY LOSS RUNS    N/A | MUST BE SUBMITTED WITHIN 20 DAYS OF REQUESTED EFFECTIVE DATE |

10/13/2005  09:46   16505728893                                    PAGE  04
09/06/2005  18:21   16585728893                                   Page 1 of 7

Proposal

# QSAP INSURANCE PROPOSAL                    Submission ID: QGLQ061961

**Date:**  9/2/2005 2:23:44 PM
**To:**   John B. Wong              **From:**  CHAU CO. INC INSURANCE AGENCY
          254 5th Street
          San Francisco, CA
          94118

Please indicate your selection by checking a box below next to the
option of your choice

| Occurrence Form with Manifestation Provision (CGB 0014 00) | ☐ With Sunset | ☐ Without Sunset |
|---|---|---|
| Occurrence With Manifestation GL Total Premium: | $8,952.00 | $10,497.00 |
| Property/Inland Marine Total Premium: | $500.00 | $500.00 |
| Total Fees and Taxes: | $685.47 | $735.30 |
| Grand Package Total: | $10,137.47 | $11,732.30 |
| Occurrence Form (CG 00 01 12/04) | ☐ With Sunset | ☒ Without Sunset |
| Occurrence GL Total Premium: | $11,771.00 | $13,813.00 |
| Property/Inland Marine Total Premium: | $500.00 | $500.00 |
| Total Fees and Taxes: | $776.38 | $842.24 |
| Grand Package Total: | $13,047.38 | $15,155.24 |

Broker Fee: _____
Total Premium and All Fees: _____

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

A. Disclosure Of Premium - In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

B. Disclosure Of Federal Participation In Payment Of Terrorism Losses - The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

## PAYMENT OPTION SELECTION: (please check appropriate box)

### OPTIONS AVAILABLE

☐ PAY IN FULL        ☒ BT1S FINANCE        ☐ AGENCY FINANCE

PAY IN FULL - The insured pays full premium (agency check is required).
FINANCE
BT1S FINANCE - Builder's & Tradesman's arranges the financing of the premium through a third party finance company. Please ask your underwriter for a finance agreement. A signed finance agreement and 25% minimum down payment are required to bind the account.
AGENCY FINANCE - Your agent finances the entire premium.

Common Eligibility Questions:
Note: The following questions apply to work done in any capacity (i.e. as an artisan contractor, site work contractor, or supplier)

| Question | YES | NO |
|---|---|---|
| 1. Does the applicant have at least 3 years of construction experience in the field of their current | Yes | |

Proposal

business/trade?

2. Are subcontracting costs less than $200,000 and less than 50% of annual gross receipts?  **Yes**

3. Are annual gross receipts over $2,000,000 for the next 12 months or in any of the past 3 years?  **No**

4. Has the applicant had more than two (2) losses or more than $20,000 total paid for losses in the past 5 years?  **No**

5. Does the applicant require all subcontractors (if used) to name their company as an additional insured AND does the insured require and maintain proof of general liability and workers compensation insurance of subcontractors?  **Yes**

6. Has the applicant performed or completed any work in the past 10 years (other than remodeling one single unit) involving, related to, or about the premises of NEW CONDOMINIUMS OR TOWNHOUSES or does the applicant plan to in the future?  **No**

7. Has the applicant completed any work (service, repair or new construction) involving, related to, or about the premises of APARTMENTS in the past 10 years or does the applicant plan to in the future?  **No**

8. Has the applicant performed or completed any work in the past 10 years involving, related to, or about the premises of NEW TRACTS OR SUBDIVISIONS OF TEN (10) OR MORE HOMES (including all phases) or are there plans to do so in the future?  **No**

9. In the past 5 years has the applicant built any structures as a GENERAL CONTRACTOR (ground up construction) or DEVELOPER, or performed work as a CONSTRUCTION MANAGER or are there plans to do so in the next year?  **No**

10. Does the applicant have any prior or planned jobs covered under "wrap-up" or OCIP policies?  **No**

11. Is the applicant performing any residential work involving framing (other than remodel work) or Concrete Foundations?  **No**

12. In the past 5 years has the applicant performed any repair or remediation of fire damage, water damage or mold damage or are there plans to do so in the next year?  **No**

13. Has the applicant performed work related to: railroads, refineries, chemical plants, airports, public utilities, hospitals, nursing homes, senior apartments, military housing or student dormitories or are there plans to do so in the future?  **No**

14. Does the applicant own vacant land, real estate development property or model homes?  **No**

15. Has the applicant had any bankruptcies or tax or credit liens within the last 5 years?  **No**

16. Has any policy or coverage being applied for been declined/non-renewed, or cancelled for non-payment within the last 3 years?  **No**

17. Have there been losses, claims or "legal actions" (lawsuits, mediations, arbitrations) against the applicant in the past 5 years or are there any pending against them now? If yes, please provide detailed description.  **No**

18. Have you been accused of faulty construction? If yes, please provide detailed description.  **No**

19. Has the applicant had any SUBSIDENCE or CONSTRUCTION DEFECT claims and/or "legal actions" (lawsuits, mediations, arbitrations)?  **No**

**Trade Specific Eligibility Questions:**

Answer "NO" if you have not performed, supervised, or subcontracted the following activities in the past 10 years.
Answer "YES" if you have or will perform, supervise, or subcontract the following activities. If a comment box appears for a "YES" answer, please provide specific information to clarify the situation.

**Classification: 91345 Carpentry - Residential Structural Remodel**
Which classification best describes the insured's operation?

|   | Question | YES NO |
|---|----------|--------|
| 1. | Any residential framing OTHER THAN REMODEL | No |
| 2. | Structural work over 2 stories | No |
| 3. | Hillside construction (with slope of greater than 20 degrees) | No |
| 4. | Solar energy panels | No |
| 5. | Roofing performed by applicant (not subcontracted) | No |
| 6. | Work on LPG gas lines, or pumps | Yes |
|   | incidental, only as it relates to a remodel job, mainly moving gas lines related to stove | |
| 7. | Environmental clean up | No |
| 8. | Playground equipment/bleacher work | No |
| 9. | Waterproofing | No |
| 10. | Fire suppression/alarm work | No |

Proposal

| | | No |
|---|---|---|
| 11. Rental of equipment to others | | No |
| 12. Demolition (structural) of a residence or commercial building | | Yes |
| partial demolition as it relates to a remodel job | | |

**Property/IM Common Eligibility Question**

| | | YES NO |
|---|---|---|
| Question | | |
| 1. Has the applicant incurred more than $5,000 in paid Inland Marine losses (including expenses) or had more than one (1) claim? | | No |
| 2. Is the applicant's Inland Marine loss ratio for the past four (4) years greater than 40%? | | No |
| 3. Are annual rental costs for rented equipment (if any) over $50,000? | | No |
| 4. Is the applicant involved in activities involving CRANES? | | No |
| 5. Is the applicant involved in activities involving ASPHALT PLANTS? | | NO |
| 6. Is the applicant involved in activities involving BRIDGE BUILDING? | | No |
| 7. Is the applicant involved in activities involving DREDGING or WATER WAYS? | | No |
| 8. Is the applicant involved in activities involving EQUIPMENT RENTAL TO OTHERS WITHOUT AN OPERATOR? | | No |
| 9. Is the applicant involved in activities involving FARMING? | | No |
| 10. Is the applicant involved in activities involving LOGGING? | | No |
| 11. Is the applicant involved in activities involving MINING - SURFACE OR UNDERGROUND? | | No |
| 12. Is the applicant involved in activities involving NON-CONTRACTING ACTIVITIES? | | No |
| 13. Is the applicant involved in activities involving RECLAMATION OF LANDFILLS? | | No |
| 14. Is the applicant involved in activities involving OIL FIELDS? | | No |
| 15. Is the applicant involved in activities involving STRUCTURAL DEMOLITION? partial demolition as part of remodeling a single family residence | | Yes |
| 16. Is the applicant involved in activities involving ROOFING? tear off roofing material as part of remodeling a residence | | Yes  No |

Limit:  1,000,000/2,000,000/2,000,000
        $50,000 Fire Damage Liability
        $5,000 Medical Payments
        $1,000 PD/BI per claim deductible ($2,500 for painting class)

| Occurrence Form with Manifestation Provision (CGB 0014 00) | With Sunset | Without Sunset |
|---|---|---|
| General Liability Premium: | $8,752.00 | $10,297.00 |
| Employee Benefits: | $0.00 | $0.00 |
| Limited Pollution: | $200.00 | $200.00 |
| Addl Insd (CG 20 10 11/85): | $0.00 | $0.00 |
| Per Proj Aggregate: | $0.00 | $0.00 |
| **Total General Liability Premium:** | $8,952.00 | $10,497.00 |
| Property/Inland Marine Basic Option | $500.00 | $500.00 |
| **Total Property/IM Premium:** | $500.00 | $500.00 |
| Terrorism Premium Total: | Not Covered | Not Covered |
| Policy Fee: | $175.00 | $175.00 |
| Stamping Fee: | $21.66 | $25.14 |
| Tax: | $286.81 | $335.16 |
| BTIS Broker Fee: | $200.00 | $200.00 |
| **Total Fees/Taxes:** | $683.47 | $735.30 |
| **Grand Package Total With All Premium and All Fees/Taxes:** | $10,127.47 | $11,732.30 |
| Occurrence Form (CG 00 01 12/04) | With Sunset | Without Sunset |
| General Liability Premium: | $11,571.00 | $13,613.00 |
| Employee Benefits: | $0.00 | $0.00 |
| Limited Pollution: | $200.00 | $200.00 |
| Addl Insd (CG 20 10 11/85): | $0.00 | $0.00 |
| Per Proj Aggregate: | $0.00 | $0.00 |

Proposal

| | | |
|---|---|---|
| Total General Liability Premium: | $11,771.00 | $13,813.00 |
| Property/Inland Marine Basic Option | $500.00 | $500.00 |
| Total Property/IM Premium: | $500.00 | $500.00 |
| Terrorism Premium Total: | Not Covered | Not Covered |
| Policy Fee: | $175.00 | $175.00 |
| Stamping Fee: | $28.00 | $32.60 |
| Tax: | $373.38 | $434.64 |
| Broker Fee: | $200.00 | $200.00 |
| Total Fees/Taxes: | $776.38 | $842.24 |
| Grand Package Total With All Premium and All Fees/Taxes: | $13,047.38 | $15,155.24 |

**Applicant Information**
Submission Type                     New Business
Applicant Name                      John B. Wong
DBA Name                            Boxer Group
Proposed Effective Date:            9/30/2005
State                               CA
Territory                           1 City of San Francisco

**General Liability Rating Criteria**
Limits of Insurance     1,000,000/2,000,000/2,000,000

**ACCOUNTS WHICH PERFORM 100% SERVICE & REPAIR OR
100% COMMERCIAL WORK ARE ELIGIBLE FOR A 10%
CREDIT. CLICK HERE.** *Not available for classes 91344, 91345, 91577, 92102, 94007,
95410, 97650, 98502, 98805, 98806, 98820 and 99946                                    No

| CLASSIFICATION | PAYROLL |
|---|---|
| 91345 Carpentry - Residential Structural Remodel | 50,000 |
| 91340 Carpentry Residential | 35,000 |
| Please select a class | |
| Please select a class | |

Subcontracting Costs                157891
Annual Gross Receipts               500000
Owners:  1     Part Time Employees:  6      Full Time Employees:   0

Applicant's Business Experience More than 60 days without GL coverage or no prior coverage

**Optional Coverages**
Limited Job Site Pollution Liability:  Yes    Employee Benefits Liability:        No
                                              CG2010 11/85 Additional Insured
Per Project Aggregate: $150 each   No1    (Only allowed on risks performing    No
w/max. of $                                   100% commercial work): $500

OR

------------------------------------------------------------

**Choose an option**

| COVERAGE TYPES | Basic |
|---|---|
| Office Contents | $5,000 |
| Miscellaneous Tools and Small Equipment* | 10,000 |

10/13/2005  09:46   16585728893                                           PAGE  08
05/05/2005  16:21   16585728893                                    PAGE  07

                                                                    Page 5 of 7

Proposal

Computer Systems - Equipment

Computer Systems - Data and Media

Computer Systems - Extra Expense

Scheduled Equipment

Installation Floater

Rented/Leased Equipment (from others)

PREMIUM                                                              $500

            * Light to medium equipment is permitted for this option only - no heavy equipment

| Applicant Information | |
|---|---|
| Applicant Name | John B. Wong |
| DBA | Boxer.Group |
| Address (physical) | 254 5th Street |
| City | San Francisco |
| State | CA 1 |
| Zip Code | 94118 |
| Mailing Address (same as physical address)No | |
| Address | P.O. Box 590603 |
| City | San Francisco |
| State | CA |
| Zip Code | 94159 |
| Contact Name: | John Wong |
| Phone Number: | 415 -. 933 - 8860 |
| Type of Business: | SOLE PROPRIETOR OR INDIVIDUAL |
| Business Experience | |
| Contractor License Number | 802874 Check Applicant's License |
| Number Years In Business | 3 |
| Total Years Of Construction Experience | 10 |
| Annual Gross Receipts | 500,000 |
| Total Payroll | 85,000 |
| Payroll of employees other than owners, officers, partners, and clerical | 0 |
| Payroll of casual laborers, leased employees, and labor pool personnel | 0 |
| Number of Owners | 1 |
| Full Time Employees | 0 |
| Part Time Employees | 6 |
| Sub Contractor Costs | 157891 |
| Insurance History | |
| Requested Effective Date | 9/30/2005 |
| Expiration Date of Current Policy | 8/30/2005 |

PRIOR CARRIER INFORMATION
(IN ORDER TO ENSURE THAT PROPER CREDITS/DEBITS ARE APPLIED TO
THIS ACCOUNT, PRIOR CARRIER INFORMATION MUST BE PROVIDED.
If not applicable, please enter "none")

| Policy Term | Carrier Name | POLICY # or MGA/Wholesaler | Premium |
|---|---|---|---|

https://bsm.biisinc.com/OSAP/proposal.aspx?SubId=DGLO061961                    9/2/2005

10/13/2005   09:46   16505720893                                          PAGE   09
                                                                    PAGE   09

                                                                    Page 6 of 7

Proposal

| | | | | |
|---|---|---|---|---|
| 2004-2005 | NONE | NA | | 0 |
| 2003-2004 | NONE | NA | | 0 |
| 2002-2003 | NONE | NA | | 0 |
| 2001-2002 | NONE | NA | | 0 |

**Claims History**
**DESCRIPTION OF LOSSES**

| | Number of Losses | Amount |
|---|---|---|
| General Liability | 0 | $ |
| Property | 0 | $ |
| Inland Marine | 0 | $ |

**Business Operations**
**1. What percentage of your work is: (each column must add to 100%)**

| Structure Type | | Construction Type | |
|---|---|---|---|
| Residential | 100 | New Construction | 0 |
| Industrial | 0 | Structural remodel/additions | 40 |
| Commercial | 0 | Service and Repair | 10 |
| | | Non-structural Remodel | 50 |
| | **100%** | | **100%** |

**2. Gross receipts for the next 12 months and last 3 years**

Annual Gross Receipts 500,000

| | | | |
|---|---|---|---|
| Next 12 Months | 500,000 | Last 12 Months | 250,000 |
| 2nd Year Prior | 150,000 | 3rd Year Prior | 100,000 |

**3. Please list your largest current/planned job and your largest job in the past 3 years**

| | | | |
|---|---|---|---|
| Largest Current/Planned Job | 1236 - 16th Ave, SF | Value | 220,000 |
| Largest Job Last 3 Years | 1345-47 25th Ave, SF | Value | 125,000 |

**4. Description Of Operations:** general building construction specializing in residence remodel
(must be at least 10 words)    work. work is primarily in the city of san francisco
Comments                        none

**WARNING:** State law requires complete and truthful information by an applicant for insurance. That
includes providing any information that would be material to your business organization. Your failure to
provide truthful answers and all material information can result in the insurance company electing to rescind
your policy. This means they will not be responsible for any claims which are presented. To avoid such a
situation, answer all of the foregoing questions truthfully and completely.

I Have Read And Understood All Of The Questions Asked And Have Provided All Information Required.

Signature of Applicant *

Date    9/8/05

Name and Title    JOHN B. WONG,    OWNER

*Must be owner, executive officer, or partner.

I Have Read And Understood All Of The Questions Asked And Have Provided All Information Required.

10/13/2005　14:03　16505728893　PAGE　02

10/13/2005 09:57 FAX 919 772 9292　BUILDERS-TRADESMEN INS　☑002/002

10/13/2005　89:46　16505728893　PAGE 10
PAGE　89
Page 7 of 7

Proposal

Signature of Broker

Date 10-13-05

**POLICY DELIVERY OPTION SELECTION**

How would you like to receive your policy?

☐ I would like to print the policy out myself　☒ Please mail it to me

**ADDITIONAL INSURED**

- ALL Additional Insured Endorsements must be requested by your agent on the BTIS web site at www.btisinc.com
- All requests related to work that is outside program guidelines will be rejected.

(B) If search was performed by someone other than the person named on line 1, please provide full name of that individual: _____

7.   (A)  Was the risk described in Section 2 submitted by you or by someone under your supervision to at least (3) insurers that are admitted in California and who actually write the type of insurance described on lines 2(C) and 2(E)? (CHECK ONE)   YES ☒   NO ☐

(B) If YES, please complete ALL sections of the following table; if NO, skip to Section 8:

| Full Name of Admitted Company | First & Last Name of Company Representative AND Telephone Number or "Online Declination" Website | Check if Employee (E) or Agent (A) | Month, Year of Declination | Declination Code* |
|---|---|---|---|---|
| 1. FARMERS INS EXCHANGE | JOHN MATTHEWS 928 847 -2800 | E☒ A☒ | 5 '05 | 2 |
| 2. TRUCK INS EXCHANGE | JOHN MATTHEWS 928 847 -2800 | E☒ A( ) | 5 '05 | 2 |
| 3. MID CENTURY INS. CO. | JOHN MATTHEWS 928 847· 2800 | E☒ A( ) | 5 '05 | 2 |

*Declination Codes: 1 - Company's capacity reached    2-underwriting reason    3-refused to state    4-other

8.   If 7(A) was answered NO, complete the following:

(A) Did you determine that fewer than 3 admitted insurers actually write the type of insurance described on lines 2(C) and 2(E)? (CHECK ONE)   YES ☐   NO ☐

(B) If NO, please explain in detail why the risk was submitted to less than three admitted insurers in California that write this type of insurance. _____

(C) If YES, please describe how you made this determination. _____

The undersigned licensee hereby certifies that this report is true and correct, and that this risk is not being placed with a non-admitted insurer for the sole purpose of securing a rate or premium lower than the lowest rate or premium available from an admitted insurer.

_____                                      10/13/05
(Signature of Licensee Named on Line 1)                        (Date)

SL-2 (Revised 06/2004)

10/13/2005  09:46   16505728893                                                    PAGE  03

NAPA VALLEY

BOXER GROUP                                                                        502
PO BOX 590603
SAN FRANCISCO, CA 94159-0803          DATE  10/7/05              11-35/1210
                                                                         280

PAY TO THE
ORDER OF    Chau & Co., Inc.                    $ 4,420. 49/XX

Four Hundred four hundred twenty & 49/100  DOLLARS

Bank of America         Customer Since
                             1993
7th and Clement
600 Clement St
San Francisco CA
650.815.4100

FOR  NIC-GL                          John B. Wong

⑆121000358⑆0502⑆02805⑆0690 7⑆

CHAU AND CO., INC.                                               0761
Trust Account
2555 FLORES ST., STE. 280
SAN MATEO, CA 94403                DATE  10-13-05      11-38/1210
415-572-9838

Pay to the
Order of    BTIS                            $ 3039. 19/

THREE THOUSAND THIRTY-NINE & 19/100 CENTS  DOLLARS

BANK OF AMERICA
BELMONT BRANCH 0569
2001 RALSTON AVENUE
BELMONT, CA 94002
(415) 324-4433

FOR  BOXER GROUP

⑆121000358⑆0761⑆05895⑆06998⑆

**UNITED STATES DISTRICT COURT**
**Northern District of California**
**450 Golden Gate Avenue**
**San Francisco, California 94102**
_____

www.cand.uscourts.gov

Richard W. Wieking                                                   General Court Number
Clerk                                                                      415.522.2000

April 28, 2008

RE:  CV 08-00488 EMC          QUANTA SPECIALTY LINES-v- JOHN B. WONG


Default is entered as to defendant John B. Wong dba Boxer Group on April 28, 2008.


RICHARD W. WIEKING, Clerk

by: (Sheila Rash
Case Systems Administrator


NDC TR-4  Rev. 3/89

**United States District Court**
For the Northern District of California

1
2
3
4
5              UNITED STATES DISTRICT COURT
6              NORTHERN DISTRICT OF CALIFORNIA
7
8   QUANTA SPECIALITY LINES                    No. C-08-0488 EMC
    INSURANCE COMPANY,
9
                Plaintiff,                     **ORDER GRANTING PARTIES' JOINT**
10                                             **MOTION TO SEVER DEFENDANT**
         v.                                    **WONG**
11
    JOHN B. WONG, *et al.*,
12
                Defendants.
13   _____/
14

15        Plaintiff Quanta initiated this insurance coverage lawsuit against Defendant John B. Wong

16   dba Boxer Group and Defendants Peasley, Lynch and Fontanello (underlying plaintiffs) seeking

17   adjudication of Quanta's rights and duties under a liability policy issued by Quanta to Defendant

18   Wong.  The coverage dispute arises out of an underlying lawsuit brought by the underlying plaintiffs

19   against Wong for alleged construction problems.  The underlying plaintiffs were awarded

20   $551,476.77 in the underlying lawsuit.

21        In this suit, Quanta seeks a declaration that it has no duty to defend or indemnify Wong

22   against the claims asserted in the underlying lawsuit.  Defendants Peasley, Lynch and Fontanello

23   seek a declaration that Quanta had a duty to Defendant and now to indemnify Wong against the

24   claims asserted in the underlying lawsuit.

25        Defendant Wong has chosen not to answer the complaint and has defaulted.  A request to

26   enter default has been filed.  Although Wong is a nominal stakeholder, the real dispute is between

27   (1) the underlying plaintiffs who now hold a judgment against Wong and (2) Quanta as to whether

28   there is coverage to pay for some or all of that judgment.  In order to permit the interested parties to

**United States District Court**
For the Northern District of California

1    proceed in this Court consistent with 28 U.S.C. Section 636(c)), the parties at the case management

2    conference jointly moved this Court to sever Mr. Wong and, upon Quanta's motion to enter default

3    judgment, issue a report and recommendation thereon.  The parties also agreed that pending that

4    severance and disposition of Wong's default, that the interested parties herein – Quanta and the

5    underlying plaintiffs – may advance the instant litigation.

6         Accordingly, the Court hereby **GRANTS** Quanta's and Peasely, Lynch and Fontanello's

7    motion to sever Quanta's claims against Defendant John B. Wong dba Boxer Group.  Under Fed. R.

8    Civ. P. 21, this Court has "great discretion to restructure and action to promote the efficient

9    administration of justice."  4-21 Moore's Fed. Prac. – Civ. Section 21.05.  "A claim may be severed

10   if it will serve the ends of justice and further the prompt and efficient disposition of litigation."

11   *CVI/Beta Ventures v. Custom Optical Frames*, 896 F. Supp. 505, (S.D. Md.) (citations omitted).  In

12   this case, Defendant Wong has chosen not to contest Quanta's claims.  The real parties in interest, in

13   these circumstances, are the underlying plaintiffs who hold the judgment against him and Quanta.

14   Whether Quanta owes a duty to indemnify Wong affects the collectibility of that judgment.  A true

15   controversy under Article III obtains as between Quanta and the underlying plaintiffs, and there is

16   no reason why the instant action should not proceed.

17        Plaintiff shall serve this Order on Defendant Wong upon receipt and shall file with the Court

18   a Certificate of Service.

19

20        IT IS SO ORDERED.

21

22   Dated:  May 16, 2008

23                                                    _____

24                                                    EDWARD M. CHEN
                                                     United States Magistrate Judge
25

26

27

28

                                              2